STATE OF MISSOURI at the Relation of CHARLES W. HOLTKAMP, Judge of the Probate Court of the City of St. Louis, Relator, v. MOSES N. HARTMANN, Judge of the Circuit Court of the City of St. Louis, now presiding in Division No. 1, and formerly and until January 1, 1932, presiding in Division No. 3 of said Court; and ROBERT W. HALL, Judge of the Circuit Court of the City of St. Louis, now presiding in Division No. 3 of said Court.—51 S. W. (2d) 22.

Court en Banc, May 16, 1932.

*Taylor R. Young, S. A. Boggiano* and *Abbott, Fauntleroy, Cullen & Edwards* for plaintiff.

*Robert B. Denny, Wurdeman, Stevens & Hoester* and *Joseph A. Falzone* for respondents; *R. Shad Bennett* of counsel.

WHITE, J.—Two proceedings seeking by prohibition in this court to stop prohibition proceedings in the Circuit Court of the City of St. Louis in which latter it is sought to prevent the Probate Court of the City of St. Louis from entertaining inquiries as to the sanity of Hugh W. Thomasson.

Elmira Townsend, October 7, 1931, filed a petition in the Probate Court of the City of St. Louis under Section 448, Revised Statutes 1929, alleging that she was next of kin to Hugh W. Thomasson, that he was of unsound mind, a resident of the city of St. Louis, and praying said probate court to inquire as to his sanity.

October 20, 1931, Charlotte Louise Welborn filed in said probate court a petition with like allegations except an averment that

Thomasson was a nonresident, under Section 503, Revised Statutes 1929, praying the same inquiry. Both of these cases still are pending in that probate court.

Thomasson, February 12, 1931, filed in the Circuit Court of the City of St. Louis two petitions, in each of which a preliminary rule was issued, seeking to prohibit Judge Holtkamp, of the Probate Court of the City of St. Louis from proceeding with those inquiries. Judge HARTMANN was then presiding in Division 3, to which the cases were assigned, of the Circuit Court of the City of St. Louis. Subsequently Judge ROBERT W. HALL was assigned to that Division.

Judge Charles W. Holcamp, January 26, 1932, filed in this court two petitions seeking to prohibit Judge HARTMANN and Judge HALL from proceeding further in the said circuit court with those prohibition cases—the one aimed at the proceeding to prohibit the inquiry begun on information of Elmira Townsend is Case No. 31,755 and the one directed at the proceeding to prohibit the inquiry started on the information filed by Charlotte Louise Welborn in Case No. 31,754.

It is stipulated that the abstract of the record in Case No. 31,754 shall be taken for and in lieu of the record in Case No. 31,755. The two cases are presented as one.

The petition in each case alleged the proceedings begun in the Probate Court of the City of St. Louis, the proceeding begun by Thomasson in the St. Louis Circuit Court to prohibit the inquiry, that the preliminary rule in prohibition was issued by the said circuit court; that the relator here, Holtkamp, respondent there, November 18, 1931, filed in that court his return to the preliminary rule; that relator therein, Thomasson, filed a demurrer to the return of respondent Holtkamp; that said demurrer, November 30, 1931, at the September term of said court, was overruled, the writ of prohibition denied and the preliminary rule quashed; that no motion to set aside that judgment of the circuit court or for a new trial was filed by relator Thomasson; that the order denying the writ of prohibition was a final judgment.

The petition further says that January 20, 1932, at the December Term, 1931, of the said circuit court, without notice to respondent there (Holtkamp), or to opposing counsel, and without jurisdiction, entered an order setting aside the order of November 30 denying the writ of prohibition; that said Hartmann and Hall, respondents here, thereby claim said cause, though actually ended, is still pending in the circuit court of the city of St. Louis.

To the petition in this proceeding is attached Exhibit A, copy of the return of respondent Holtkamp to the writ filed in the circuit court of the city of St. Louis. That return alleges that the prohibition proceeding in that court was not prosecuted in good

faith by Thomasson, was instituted without his knowledge or consent by Wurdeman, Stevens & Hoester, and prosecuted for their own benefit and for the benefit of others who held and claimed deeds of trust aggregating $194,000, executed by said Thomasson since 1930, while he was of unsound mind and incapable of managing his affairs.

That return in the circuit court further denied that Thomasson ever was a resident of St. Louis County; alleged that he was always a resident of the city of St. Louis, and the judge of the probate court of the city of St. Louis had jurisdiction to proceed with the inquiry in that court, and prayed that the prohibition proceeding be dismissed unless Thomasson should appear in person in the court and give his testimony. The demurrer to that return was overruled as stated.

The abstract of the record contains a copy of the minutes of the proceeding before Judge Hartmann in the circuit court:

"November 12, 1931. Cause assigned to Division No. 3.   484

"November 12, 1931. Writ of prohibition ordered to issue returnable Thursday, November 19, 1931 at 10 A. M. (HARTMANN, J.)   488- 46

"November 18, 1931. Return of writ of prohibition filed. 488-85

"November 19, 1931. Relators demurrer to return of respondent filed. Hearing on writ of prohibition passed to Thursday, December 3, 1931 at 10 A. M.   488-85

"November 30, 1931. Demurrer of Hugh W. Thomasson to return of respondent Chas. W. Holtkamp overruled. Writ of prohibition denied (HARTMANN, J.)   488-114

"January 22, 1932. Petition for substitution of Edward W. Terry guardian and curator of Hugh W. Thomasson as party plaintiff filed.   488-298"

Attached to the petition here is a certified copy of the record made November 30, at the September Term, 1931, as follows:

"Exhibit B.

"STATE OF MISSOURI }
"CITY OF ST. LOUIS }  SS.

"IN THE CIRCUIT COURT, CITY OF ST. LOUIS
"SEPTEMBER TERM, 1931
"Monday, November 30th, 1931

"State of Missouri at the Relation
of Hugh W. Thomasson, Relator,
v. 174643-B.
Charles W. Holtkamp, Judge of the
Probate Court, etc.

"The court having heard and duly considered the demurrer of Hugh W. Thomasson to return of respondent, Charles W. Holt-

kamp, heretofore filed and submitted herein, doth order that said demurrer be and the same is hereby overruled.

"Monday, November 30th, 1931

"State of Missouri at the relation of
Hugh W. Thomasson, Relator,
v. 174463-B.
Charles W. Holtkamp, Judge of the Probate
Court of the City of St. Louis, Missouri,

"Now at this day the hearing on the writ of prohibition, heretofore issued herein on the 12th day of November, 1931, coming on for hearing come the parties hereto by their respective counsel; thereupon said hearing progressed before the court and being terminated the same is submitted to the court upon plaintiff's bill, the return thereto as well as the proof adduced, and the court being fully advised of and concerning the premises, doth find in favor of defendant respondent.

"Wherefore, it is considered, adjudged and decreed by this court that plaintiff relator's prayer for a writ of prohibition be and the same is hereby denied, that the defendant be discharged, go hence without day and recover of the relator, the costs of this suit, and have therefor execution."

Duly certified by John Schmoll, Clerk of said court under the seal of the court.

The entry made January 20, 1932, was as follows:

"It appearing to the satisfaction of the court that on November 30, 1931, the court, in passing upon the demurrer of Hugh W. Thomasson to the return of respondent Charles W. Holtkamp, Judge of the Probate Court of the City of St. Louis overruled said demurrer. At said time the court did not have before it previous minutes, passing the hearing on the writ of prohibition to Thursday, December 3, 1931, at 10 o'clock A. M. The court, therefore, inadvertently in determining said demurrer on said November 30, 1931, denied the writ of prohibition without a hearing thereon. This was error and should be set aside, which is now accordingly done. Nunc pro tunc order as and of November 30, 1931."

Judge HARTMANN and Judge HALL filed a return to the writ of prohibition in each case in this court in which they admitted all the essential facts set out in the petition for the writ of prohibition relating to the proceedings pending in Division No. 3 of the Circuit Court of the City of St. Louis, but denied that said cause was argued on either November 25th or November 30th, 1931; and alleged that no person representing Hugh W. Thomasson was in court on the 30th day of November, 1931, when said demurrer was overruled; that the respondents do not know whether Exhibit B, attached to plaintiff's petition "filed herein is a true copy of the order filed therein."

The return then specifically denied the legal effect of the orders and proceedings mentioned in the petition. The return then closes with the following:

"Allege that the docket entry made on November 30, 1931, in the prohibition proceeding of Hugh W. Thomasson against Honorable CHARLES W. HOLTCAMP, Judge of the Probate Court of the City of St. Louis, Missouri, reciting that the writ of prohibition had been denied, was erroneous and wrongful, and state that said cause was not at issue at said time; that said cause had not been heard or submitted at said time, and that said cause had previously been set for hearing and trial, as shown by the record of same, for December 3, 1931, the facts of all of which appear in the minutes entered in the record in said cause, and that when the erroneous docket entry was brought to the attention of the Honorable MOSES N. HARTMANN, Judge, that he corrected said error by making and entering the *nunc pro tunc* order entered in the record of said causes on January 20, 1932, as shown by the record thereof, and set out in plaintiff's petition herein; and that said *nunc pro tunc* order was made in order to cause the record of said proceeding to speak the truth and to correct the inadvertent and erroneous record and entry previously made on November 30, 1931."

The relator here, Holtkamp, then filed a demurrer to that return. The issue here turns upon the sufficiency of that return.

I. It is claimed by petitioner that the Circuit Court of the City of St. Louis, Division No. 3, was without jurisdiction after the term to set aside the order of the court denying the writ of prohibition, and therefore there is nothing pending before the court; that the cases were fully disposed of at the September Term 1931, and could not be revived by the *nunc pro tunc* order made. It was a final judgment entered November 30, 1931, a determination of the issues, including issues of fact, in the prohibition proceeding pending before Judge HARTMANN. Yet, by the order made by Judge HARTMANN at the December Term, January 20, 1932, set out above, this judgment purports to be set aside without notice to the parties interested.

A court during the term at which a judgment is rendered may set it aside or modify it, but after the lapse of a term the court loses jurisdiction, and has no power to annul such a judgment. [Sutton v. Anderson, 326 Mo. l. c. 322, 31 S. W. (2d) 1026; Ewart v. Peniston, 233 Mo. l. c. 710, 136 S. W. 422; State ex rel. Conant v. Trimble, 311 Mo: l. c. 144, 277 S. W. 916; 15 R. C. L. 128.] It was said in the Ewart Case, l. c. 709:

"'The statute does not preclude the court in the exercise of its common-law powers to protect the sanctity and justice of its own

394

judgments, if such power is exercised at the term, and before the court has lost control of such judgment by the lapse of the term.' ''

And l. c. 710:

'' 'But after the lapse of the term the court loses jurisdiction over the cause and has no authority to set aside the judgment.' ''

Respondents, however, assert here that it was a *nunc pro tunc* entry; the order of January 20, 1932, closes: *"Nunc pro tunc* order as of November 30, 1931.''

A *nunc pro tunc* entry at a subsequent term can only be made of a judgment or order actually made. It is not pretended here that this entry January 20, 1932, was the order actually made by the court November 30, 1931. [Burton v. Burton, 288 Mo. l. c. 538, 232 S. W. 476; Marsala v. Marsala, 288 Mo. l. c. 504, 232 S. W. 1048; Burnside v. Wand, 170 Mo. l. c. 543, 71 S. W. 337; Fetters v. Baird, 72 Mo. 391; Williams v. Walton, 84 Mo. App. l. c. 441; Clancy v. Luyties Realty Co., 321 Mo. l. c. 285, 10 S. W. (2d) 914; Gibson v. Chouteau's Heirs, 45 Mo. l. c. 173.]

In Clancy v. Luties it was said, quoting from an earlier case:

'' 'A *nunc pro tunc* judgment, at a subsequent term, can only be made upon evidence furnished by the papers and files in the cause, or something of record, or in the clerk's minute book or on the judge's docket. In other words, a *nunc pro tunc* entry can only be employed to correct a clerical mistake or misprision of the clerk. *It can never correct a mistake or oversight of the judge nor be used to correct judicial errors, nor to render a judgment different from that actually rendered,* even though the judgment actually rendered was not the judgment the judge intended to render.' ''

In Williams v. Walton, 84 Mo. App. l. c. 441, the Kansas City Court of Appeals said:

''The power to make an entry *nunc pro tunc* in a cause after the end of a term *does not authorize the entry of an order which ought to have been made,* but only those which were actually made, the evidence of which is preserved by some minute made or paper filed at the time.''

In Burnside v. Wand, 170 Mo. 543, 71 S. W. 337, the court said in regard to a *nunc pro tunc* judgment:

''*It can never correct a mistake or oversight of the judge, nor be used to correct judicial errors, nor to render a judgment different from that actually rendered,* even though the judgment actually rendered was not the judgment the judge intended to render '' (The italics in each case ours.)

It is not shown by this record and it is not pretended by the respondents Hartmann and Hall here that the *nunc pro tunc* entry is a correction of any mistake by the clerk. The clerk entered the judgment in accordance with the minute made and signed by the

judge. The only excuse for *nunc pro tunc* entry here is, as said in the order of January 20, 1932, that the court "inadvertently" overlooked a previous minute setting the case for hearing December 3rd. That minute is shown in the list of entries. It is not claimed that this oversight could be a mistake of the clerk. It was a mistake of the court. The judge overlooked the minute and therefore took up the case in advance of the date set. That was his mistake and not the clerk's and under all the authorities it afforded no reason for annulling the proceedings which he deliberately undertook and a judgment which he deliberately entered.

■ II. It is not claimed that the entry on that minute in the clerk's docket deferring the consideration of the case to December 3rd vitiated or modified in any way the judgment actually entered upon a hearing November 30th. It was a minute of the clerk and not a minute of the court that the matter should be deferred to December 3rd. It was not binding upon anybody because the parties were present, the case taken up on the 30th, tried and argued. The court then in the order made January 20th says that the court, November 30, 1931, *"in passing upon the demurrer* . . . *overruled said demurrer* and *inadvertently* . . . denied the writ of prohibition without a hearing thereon."

Thus the record of January 20th admits the fact of the ruling on the demurrer and the final disposition of the case, but states that was done "inadvertently" without hearing, in the face of the finding and judgment to the contrary.

We have an extraordinary situation: A judgment actually entered by the court is set saide at a subsequent term without notice to the parties interested; no record evidence whatever that a different order or judgment was made. It is not claimed here that any order actually was made November 30th, which this *nunc pro tunc* entry purports to make January 20th. It is not claimed that any minute shows it. Without such a minute no *nunc pro tunc* order could be made. [Thaler v. Niedermeyer, 185 Mo. App. l. c. 254, 170 S. W. 383; Shepard v. Grier et al., 160 Mo. App. l. c. 614, 140 S. W. 932; Lindsey v. Nagel, 157 Mo. App. l. c. 137, 137 S. W. 912; Clancy v. Luyties Realty Co., 321 Mo. l. c. 285, 10 S. W. (2d) 914.] In the Luyties case the court said:

"It is fundamental that an order *nunc pro tunc* cannot be made unless there is some minute, order or paper in the case upon which to base the same." [Osagera v. Schaff, 293 Mo. l. c. 346, 240 S. W. 124; Burton v. Burton, 288 Mo. l. c. 538, 232 S. W. 476; Page v. Chapin, 80 Mo. App. l. c. 161.]

■ III. Furthermore, the judgment was set aside without notice; the order January 20, 1932, therefore was without the juris-

diction of the court. [Koch v. Railroad Co., 77 Mo. 354; Wand v. Ryan, 166 Mo. 656, 65 S. W. 1025.] See, also, 10 A. L. R. 586, et seq., where numerous cases from many states are noted, including the Koch case from Missouri. In the discussions in that volume a distinction is drawn between clerical errors and judgments. After the term a *nunc pro tunc* entry may be made correcting a clerical error but it cannot be made correcting a judicial error. No error can be corrected after the term without notice. There is no ruling to the contrary.

Appellant cites State ex rel. Buckner v. Ellison, 277 Mo. 294, 210 S. W. 401, where an entry made by the clerk did not correspond with the entry made by the court on the court's docket in that there was a judgment in favor of one party and a dismissal as to the other. The judgment was corrected so that the order in which those entries were made should correspond with the *court's docket*. There is nothing in that case to help the respondents here. The opinion states emphatically that there must be an entry of some kind upon which to base a *nunc pro tunc* order.

■ IV. It is suggested that this is a collateral attack upon the judgment, citing Collier v. Lead Co., 208 Mo. 246, 106 S. W. 971, as quoted in the Buckner case, 1. c. 301, where it is said that a *nunc pro tunc* judgment cannot be attacked in a collateral proceeding on the ground of no evidence to support it. In Collier v. Lead Company the files were missing, and there was nothing to show whether or not there was something in the files supporting the *nunc pro tunc* entry. In the absence of proof to the contrary the court presumed that there was some minute which would support it against collateral attack.

The return of HARTMANN and HALL here alleges that all the facts "appear in the minutes entered in the record in said cause," including "the erroneous docket entry" which the judge attempted to correct. Any judgment may be attacked collaterally where the infirmity appears on the face of the record. [Fetters v. Baird, 72 Mo. 391.] It has been exactly so held in this same kind of a case. [Hunt v. Searcy, 167 Mo. 158, and other cases cited in State ex rel. Terry v. Holtkamp, 51 S. W. (2d) 13.] It is not claimed that the order entered was not the actual order of the court; it is claimed only that the court made a mistake in hearing the case before the time set for it, although the parties were ready and submitted it.

■ The respondents, however, question the judgment in these words.

". . . . state that they do not know whether Exhibit B filed herein is a true copy of the order filed therein."

We do not know what the respondents mean by "the order filed therein" unless it means the judgment actually entered of record

and certfiied to in Exhibit B, attached to the petition, set out above. Thus the respondents seek to put the relator to proof without hazarding a direct denial.

Our Statute, Section 776, Revised Statutes 1929, says as to what an answer shall contain:

"First, a general or specific denial of each material allegation of the petition controverted by the defendant, or any knowledge or information thereof sufficient to form a belief."

The form of this particular denial does not say that the respondents have no knowledge or information sufficient to form a belief. It does not deny that there was such a record made. It simply says that they do not know whether Exhibit B is a correct copy of the record made. ██ As a matter of fact Judge HARTMANN did not know whether it was a correct copy of the judgment actually entered. He could not deny knowledge of his own record in his own court. He sets up the minute which he made on his docket that day. He takes judicial notice of everything in his record and he knows whether that was a correct copy of the record which was made. Likewise Judge HALL was bound to know. Their denial of knowledge did not conform to the statute. [Revely v. Skinner, 33 Mo. 98; Watson v. Hawkins, 60 Mo. 553.]

██ The denial of knowledge or information sufficient to form a belief, even if in the proper form and complete, cannot be employed as to facts which, by reason of being on the public record or otherwise, are readily accessible. [49 C. J. 268.]

It was said in the Watson v. Hawkins case, 60 Mo. l. c. 553:

"It is certain the statement of the plaintiff in his reply referred to, was tantamount to neither a direct nor indirect denial of the allegation in the defendant's answer, as to the validity of the proceedings."

So, the respondents here by this uncertain statement undertake not only to evade the effect of the judgment which Judge HARTMANN entered, but seek to evade the effect of bringing it to issue. By that evasive denial the respondents seek to put relator to other proof than the duly authenticated copy of the judgment attached to the petition, as if other proof were possible.

This point is considered more fully in State ex rel. Elmira Townsend et al. v. Mueller, etc., 51 S. W. (2d) 8.

We hold therefore that the Circuit Court of the City of St. Louis, Division Number Three, has nothing before it, has no jurisdiction to proceed in prohibition against Judge HOLTKAMP in either of the two cases mentioned. The record in one is to be taken as the record in the other.

It is not denied that the information filed before Judge HOLTKAMP in the probate court gave him jurisdiction to inquire into the facts

regarding the residence of Hugh W. Thomasson and other facts which would determine relators' jurisdiction to proceed with the inquiry.

The preliminary rules in prohibition in these two cases, Nos. 31,754 and 31,755 are made absolute. All concur.