STATE OF MISSOURI EX REL. EDWARD W. TERRY, Public Guardian of the County of St. Louis and Guardian in Charge of the Estate of HUGH W. THOMASSON, Relator, v. CHARLES W. HOLTKAMP, Judge of the Probate Court of the City of St. Louis.—51 S. W. (2d) 13.

Court en Banc, June 3, 1932.

*Robert B. Denny, Wurdeman, Stevens & Hoester* and *Joseph A. Falzone* for relator.

*Taylor R. Young, S. A. Boggiano* and *Abbott, Fauntleroy, Cullen & Edwards* for respondent.

WHITE, J.—Edward W. Terry, Public Administrator and *ex-officio* public guardian of St. Louis County, seeks by prohibition in this court to restrain Judge HOLTKAMP from proceeding with an inquiry into the sanity of Hugh W. Thomasson, of whom relator claims to have been duly appointed guardian November 27, 1931.

The facts pleaded in the petition, not specifically admitted, are denied in the return of respondent, and all facts pleaded in the return not specifically admitted are denied in relator's reply. Nearly all the essential facts are admitted on both sides. Both sides in their pleadings and in their briefs refer to cases numbered 31,734, 31,754, and 31,755 as supplying certified copies of records not set out in the abstract of the record here.

For convenience, without having to refer to the statements in the other cases we state the essential, undisputed facts here:

On October 7, 1931, Elmira Townsend filed an information in the

Probate Court of the City of St. Louis alleging that she was next of kin to Hugh W. Thomasson, that he was a resident of the city of St. Louis, and insane, and asking an inquiry. October 20, 1931, Charlotte Louise Welborn filed like information in said court, alleging that Thomasson was a nonresident under the provision of Section 503, Revised Statutes 1929. These are the proceedings which relator seeks to prohibit.

November 12, 1931, Thomasson filed in the Circuit Court of St. Louis a petition praying for a writ of prohibition to prevent Judge HOLTKAMP of said Probate Court from proceeding with those inquiries. Judgment in that prohibition proceeding was rendered in favor of HOLTKAMP November 30, 1931, and afterwards set aside January 20, 1932, as related in State ex rel. Holtkamp v. Hartmann, 330 Mo. 386, 51 S. W. (2d) 22. Relator therefore claims that those prohibition proceedings are still pending though we hold in the Holtkamp cases that they were ended by the judgment of November 30, 1931.

Notwithstanding his claim that those prohibition proceedings are still pending in the Circuit Court of the City of St. Louis, relator brings this one in this court for the same purpose. He bases his right to maintain this proceeding on his appointment as guardian of the person and estate of Hugh W. Thomasson, by the Probate Court of St. Louis County.

There were two successive proceedings in the Probate Court of St. Louis County to have Thomasson adjudged insane. The first one was upon information filed January 27, 1931, by Ella F. Bolles, alleging that Thomasson was of unsound mind and a resident of St. Louis County. Notice in that proceeding was issued and delivered to the sheriff of St. Louis County, and subsequently an *alias* notice is noted in the record, which was returned *non est*.

On February 13, 1931, appears this entry in the records of the said Probate Court:

"Proof of service of notice filed. Wurdeman, Stevens & Hoester enter their appearance as attorneys for informant. Information dismissed at cost of informant."

March 17, 1931, the order of the probate court dismissing said case was set aside, and petition for reinstatement was heard and granted; Hugh W. Thomasson, the informee, by his duly authorized attorney S. C. Rogers, entered his appearance to the February Term, 1931, of said probate court, and voluntarily waived issuance of notice, and the empaneling of a jury. The cause was duly submitted, proof adduced and the court found that Hugh W. Thomasson was a resident of St. Louis County, a person of unsound mind, and Edward W. Terry was appointed to take charge of the person and estate of Hugh W. Thomasson.

614

On March 18th Terry appeared in said court and presented his petition asking authority to enter his appearance in a case pending in Division Number 4 of the Circuit Court of St. Louis, entitled, Hugh W. Thomasson, plaintiff, v. Carolyn Mahood, *alias* Grace Caroline Thomasson, the purpose of which was to set aside and cancel certain deeds to property owned by Thomasson, and also in a case entitled Hugh W. Thomasson v. Caroline Mahood, the nature of which was to cancel an alleged marriage contract between the two, Terry's petition alleging that it would be better for all persons interested to have the said guardian and curator substituted as plaintiff in both suits. The court heard evidence, sustained the petition, and authorized Edward W. Terry to file motions in both said suits and to be substituted as party plaintiff.

April 13, 1931, an affidavit for appeal was filed in the said probate court from the judgment adjudging Thomasson insane, by Robert F. Denny, "a reputable citizen," who filed an appeal bond, and the case was appealed to the Circuit Court of St. Louis County.

On May 4, 1931, Hugh W. Thomasson appeared in said circuit court specially for the purpose of his motion only, and moved the court to quash and abate the entry of appearance made in the probate court for him by Stephen C. Rogers, alleging that said entry by Rogers was not authorized, that Rogers was acting in more or less collusion with Ella F. Bolles, the informant. This motion was verified by Hugh W. Thomasson May 1, 1931.

On May 25, 1931, at the May Term of the said circuit court, the appellant dismissed the motion of Hugh W. Thomasson to quash the appearance and waiver of notice by Rogers filed in the probate court on March 17. On the same day Ella F. Bolles by attorneys dismissed the information and the entire proceeding was dismissed. The record of that proceeding is important here as showing the relation of the parties.

■ S. C. Rogers has filed in this court, in this proceeding, an affidavit in which he stated that he entered the appearance of Hugh W. Thomasson in the Probate Court of St. Louis County, that he had been attorney for Thomasson for fifteen years, and that in January, 1931, Grace Mahood had kidnapped Thomasson and taken him out of the State, held him prisoner *incommunicado*, and for that reason he had not communicated with Thomasson, his client, and that his appearance of Thomasson in the insanity proceeding was not the result of any coalition between Rogers and Ella F. Bolles, but was for the purpose of preventing Grace Mahood and others from obtaining the property of Thomasson; that Thomasson had employed affiant to institute on his behalf a suit to annul the marriage with said Grace Mahood and that affiant entered said suit with full authority of Thomasson, and that service was fully had upon Grace Mahood; that

the appearance in said insanity proceeding March 17th was after service had been had on Grace Mahood in said suit. That affiant was not permitted to see Thomasson except once when the latter was seated in an automobile with Grace Mahood and Mary Larkin, and Thomasson said "I discharge you as my attorney," when the automobile was driven away and affiant did not see him again. The affidavit is of great length and goes into the history of Thomasson's alleged kidnaping by Grace Mahood, Wilfred Jones and Robert Denny.

We cannot consider here questions of fact sought to be injected into the case by such an affidavit, and it would be unnecessary to notice it were it not that relator filed in this court his motion to strike out the affidavit and demands a ruling on the motion. We are limited to the record made in the courts below.

The motion to strike out is therefore sustained.

November 27, 1931, the second proceeding in the Probate Court of St. Louis County was begun when William B. MacBride filed an information in said court alleging the insanity of Hugh W. Thomasson and that he is a resident of St. Louis County. On the same day an inquiry was had, Thomasson adjudged to be insane and the relator Terry again appointed guardian. Appeal was taken from that judgment to the Circuit Court of St. Louis County by Henry S. Bolles, husband of Ella F. Bolles, and the cause is still pending in said circuit court as shown in State ex rel. Elmira Townsend v. Mueller, 51 S. W. (2d) 8, 330 Mo. 641.

I. The relator in his brief and argument, apparently on the theory of estoppel, asserts that the "same hand" which filed the information in St. Louis County in January, 1931, alleging Hugh W. Thomasson to be a resident of St. Louis County, also took an appeal to the Circuit Court from the judgment of the Probate Court of St. Louis County, rendered November 27, 1931. Ella F. Bolles filed the first information in that probate court. Henry S. Bolles, her husband, took the appeal in the later case. Relator evidently overlooked the act emancipating married women so that husband and wife are no longer one. They can and do appear on opposite sides of the same suit. The fact that Ella F. Bolles is the sister of Elmira Townsend does not bind Elmira Townsend to what Ella F. Bolles in another case might have sworn to about the residence of Thomasson. Elmira Townsend filed the information in the Probate Court of the City of St. Louis October 7, 1931, and it is that proceeding which the respondent here, Holtkamp, asserts gives the Probate Court of the city of St. Louis jurisdiction.

*An entry on the record set out above shows that Wurdeman, Stevens & Hoester entered their appearance as attorneys for informant* (Ella F. Bolles.)

Thus Ella F. Bolles appeared on the side represented by Judge WURDEMAN.

Relator further calls attention to the character of the information filed by Charlotte Louise Welborn before Judge HOLTKAMP in which she alleged that Thomasson was a nonresident of the State. That, like the other incident, does not bind Elmira Townsend.

Two informations were filed before Judge HOLTKAMP, one by Elmira Townsend alleging the residence of Thomasson as the city of St. Louis, one by Charlotte Welborn alleging he was a nonresident under Section 503; both proceedings are pending. This proceeding by Terry is to prohibit Holtkamp from making *any* inquiry into the sanity of Thomasson. If there is any information filed in his court which authorized such an inquiry, it does not matter how many other proceedings are instituted before him which he could not entertain. Besides, the apparent former inconsistent positions of Charlotte Welborn and Ella F. Bolles would affect only their credibility, not their rights.

II. Respondent asserts that the judgment November 30, 1931, of the Circuit Court, Division Three, of the City of St. Louis set out in State ex rel. Holtkamp v. Hartmann, 330 Mo. 386, 51 S. W. (2d) 22, is *res adjudicata;* that it was a judgment in a prohibition proceeding brought by Thomasson, to prohibit Judge HOLTKAMP from entertaining the same proceeding which Terry seeks to stop in this case. Relator's abstract of the record in this case sets out the minutes of the proceeding in the prohibition proceeding of Thomasson v. Holtkamp, but omits the judgment which, however, is referred to in the pleading of both sides. For convenience we set it out:

"Now at this day the hearing on the writ of prohibition, heretofore issued herein on the 12th day of November, 1931, coming on for hearing, come the parties hereto by their respective counsel; thereupon, said hearing progressed before the court, and being terminated, the same is submitted to the court upon plaintiff's bill, the return thereto as well as the proof adduced, and the court being fully advised of and concerning the premises, doth find 'n favor of defendant respondent.

"Wherefore, it is considered, adjudged and decreed by the court that plaintiff relator's prayer for a writ of prohibition be and the same is hereby denied, that the defendant is discharged, go hence without day and recover of the relator the costs of this suit, and have therefor execution."

That judgment rendered November 30, 1931, is complete, final and conclusive upon the parties. We held in State ex rel. Holtkamp et al. v. Hartmann et al., that it is in force and not set aside by the *nunc pro tunc* entry of January 20, 1932.

Relator in his brief asserts that respondent, Judge HOLTKAMP, was restrained from going on with the insanity proceedings by *preliminary rule* in prohibition issued by Judge HARTMANN, November 12, 1931, and that preliminary writ is still in force and effect. But Judge HOLTKAMP had acquired jurisdiction October 7, 1931, before the preliminary writ was issued, and after the above judgment was rendered in his favor can still proceed with it. On his own theory relator had no right to file this suit because there was another suit pending between the same parties and involving exactly the same issues, and if we should hold that the prohibition suit in the Circuit Court of the City of St. Louis is still pending we would have to abate this suit.

The assertion by the relator that the pendency of that prohibition suit prevents Judge HOLTKAMP from proceeding with the inquiry is a concession that the issues in that case are the same as the issues in this. The entire record shows they are the same, to prohibit Judge HOLTCAMP from entertaining an inquiry on the same information into the sanity of Hugh W. Thomasson for the same alleged reason, that Thomasson was not a resident of the city of St. Louis. Therefore the judgment in that case is *res adjudicata* and estops Terry from proceeding with this case—the same kind of proceeding, the same issues and the same parties.

Relator, however, claims that the parties are not the same because Terry is the relator in this suit while Thomasson himself was the relator in that suit. Yet Terry did file petition January 22, 1932, asking that he be substituted as party (relator), as guardian and curator of Thomasson.

Whether or not Terry was a party to the former suit makes no difference. The doctrine of *res adjudicata* applies to parties and their privies. The parties concluded by a judgment include all those who have a right to control the proceeding. ''Privies'' are those who succeed to the rights or properties of the parties to the judgment. That means executors, administrators, assignees, partners and other successors in interest. [34 C. J. 525, 526.] Terry represents no one in this case except his alleged ward. [Summet v. Realty & Brokerage Co., 208 Mo. l. c. 510, 511, 106 S. W. 614; Jennings v. Cherry, 301 Mo. l. c. 330, 257 S. W. 438; Crispen v. Hannavan, 50 Mo. l. c. 418-9.] It was said in the Summet case that the law is too well established to require a reinvestigation of the question that judgments are binding upon the parties to the suit and their privies whether in contract, estate, blood or in law. (l. c. 510.)

The relator cites two cases upon this point: Dahlberg v. Fisse, 328 Mo. 213, 40 S. W. (2d) 606, l. c. 608, where a petition was presented to this court for a writ of prohibition, l. c. 608. The court refused to issue a preliminary rule. It was contended that this was *res adjudicata*, l. c. 611. This court held that there was no decision upon

the merits; therefore no *res adjudicata*. [Wilson Company v. Hartford Fire Ins. Co., 300 Mo. 1, 254 S. W. 266.] In that case there was a judgment dismissing the proceeding and therefore no adjudication upon the merits. Relator overlooks the solemn entry of the judgment quoted above which shows that there was an adjudication upon the merits.

III. Even if there were not such judgment the relator could maintain this suit *only* if the adjudication of the Probate Court of St. Louis County November 27, 1931, whereby relator was put in charge of Thomasson and his estate, were valid, a judgment which the respondent challenges as void for want of jurisdiction. The record of that proceeding is set out in the relator's abstract of the record, as follows:

"In Re Estate of Hugh W. Thomasson, )
        "Alleged to be Insane.                    )
"Now comes Wm. B. MacBride and by information in writing informs the court that Hugh W. Thomasson, a resident of St. Louis County, Missouri, is a person of unsound mind and incapable of managing his affairs, and the court being satisfied that there is good cause for the exercise of its jurisdiction it is ordered by the court that an inquiry into said matter be had on Friday, December 4th, 1931, at 9:30 A. M., and that said Hugh W. Thomasson be notified, according to law, of such proceedings *at least five days* before said date.

"Notice issued and delivered to Clarence E. Leritz, as special process server.

"Now, on this 27th day of November, 1931, comes Clarence E. Leritz and files proof in writing that he served said notice on Hugh W. Thomasson in St. Louis County, Mo., on November 27th, 1931.

"Now comes G. A. Wurdeman and files entry of appearance of Hugh W. Thomasson in words and figures, as follows:

"I, the undersigned, Hugh W. Thomasson, of the city of Clayton, County of St. Louis, State of Missouri, do hereby state that I have received a copy of the notice hereto attached, issued by Honorable Sam D. Hodgdon, Judge of the Probate Court of St. Louis County, Missouri, charging me with being of unsound mind and incapable of managing my affairs filed this day.

"And I waive the time set for hearing in said notice, to-wit, December 4, 1931, and agree to an immediate hearing of the same before the Honorable Sam D. Hodgdon, Judge, personally, and waive a hearing before a jury, and authorize G. A. Wurdeman, attorney at law, at Clayton, Missouri, to represent me at such hearing.

                                            "HUGH W. THOMASSON.

"State of Missouri,   )
                 ) ss.
"County of St. Louis. )

"On this 27th day of November, 1931, personally appeared Hugh W. Thomasson, to me known to be the person in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.

"My term expires May 12, 1934.

"CLARENCE E. LERITZ,
" (Seal)                             Notary Public.

"Now comes Joseph A. Falzone and enters his appearance as attorney for Wm. B. MacBride, the informant.

"G. A. Wurdeman, as attorney for the subject, in open court, waives the issuance and service of notice and requests an immediate hearing.

"It appearing to the court that neither the informant, or the subject request a jury, but both join in the request, in open court, that the court try the case sitting as a jury, the said cause is duly called for trial.

"Whereupon the said cause is duly submitted to the court upon the evidence and proofs presented, and the court being duly advised in the premises, doth find that the said Hugh W. Thomasson is a resident of St. Louis County, Missouri, and the court doth further find that the said Hugh W. Thomasson was duly notified of these proceedings and that he could be present and represented by counsel, if he so desired, and the court doth further find that said Hugh W. Thomasson is a person of unsound mind and incapable of managing his own affairs as charged in said information, and the court doth thereupon appoint Edward W. Perry, Public Administrator of St. Louis County, guardian of the person and estate of the said Hugh W. Thomasson.

"It appearing to the court that Hugh W. Thomasson was not present in court at the aforesaid hearing, the appointment of Edward W. Terry as guardian and the finding that Hugh W. Thomasson is a person of unsound mind is set aside by the court on its own motion.

"It further appears to the court that Hugh W. Thomasson presents himself in person in open court and by G. A. Wurdeman, his attorney; that Joseph A. Falzone enters his appearance as attorney for Wm. B. MacBride, the informant; that Hugh W. Thomasson, in person, in open court, refiles his entry of appearance and appointment of G. A. Wurdeman as his attorney; that Hugh W. Thomasson, in person, in open court, and by G. A. Wurdeman, his attorney, waives the issuance and service of notice, and requests an immediate hearing; that neither Hugh W. Thomasson, the subject, or Wm. B. MacBride, the informant, request a jury, but both join in a request

that the court try the case, the judge sitting as a jury, and that the said cause is duly called for trial.

"Whereupon, that said cause is duly submitted to the court upon the evidence and proofs presented, and the court being duly advised in the premises, doth find that the said Hugh W. Thomasson is a resident of St. Louis County, Missouri, and the court doth further find that the said Hugh W. Thomasson was duly notified of these proceedings and that he could be present and represented by counsel, if he so desired, and the court doth further find that said Hugh W. Thomasson is a person of unsound mind and incapable of managing his own affairs as charged in said information, and the court doth thereupon appoint Edward W. Terry, Public Guardian of St. Louis County, guardian of the person and estate of Hugh W. Thomasson."

██ Notice to appear December 4th was served on Thomasson the day the information was filed, November 27, 1931, and the entire proceeding had on that day. There was first an adjudication which was set aside and another adjudication on the same day declaring Thomasson insane and appointing Terry guardian of his person and estate. The statute under which this proceeding was begun, Sections 448 and 450, Revised Statutes 1929, are as follows:

"Sec. 448. *On information, probate court to inquire as to sanity, etc.*—If information in writing, verified by the informant on his best information and belief, be given to the probate court that any person in its county is an idiot, lunatic or person of unsound mind, and incapable of managing his affairs, and praying that an inquiry thereinto be had, the court, *if satisfied there is good cause for the exercise of its jurisdiction*, shall cause the facts to be inquired into by a jury: *Provided*, that if neither the party giving the information in writing, nor the party whose sanity is being inquired into call for or demand a jury, then the facts may be inquired into by the court sitting as a jury."

"Sec. 450. *Party under investigation to be notified—attorney appointed and fee allowed.*—In proceedings under this article, the alleged insane person must be notified of the proceeding by written notice stating the nature of the proceeding, time and place when such proceedings will be heard by the court, and that such person is entitled to be present at said hearing and to be assisted by counsel, such notice to be signed by the judge or clerk of the court under the seal of such court, and served in person on the alleged insane person a reasonable time before the date set for such hearing. If no licensed attorney appears for the alleged insane person at such hearing, then the court shall appoint an attorney to represent such person in such proceeding, and shall allow a reasonable attorney fee for the services rendered, same to be taxed as costs in such proceeding."

Thus Section 450 requires that a written notice stating the nature of the proceeding signed by the judge shall be served in person on the alleged insane person *a reasonable time before* the date set for such hearing.

Section 760, Revised Statutes 1929, requires that notice, unless a different time is prescribed by law or the practice of the court, shall be given at least five days before the time appointed for the hearing of the motion, pleading or other proceeding. There was an attempt to give more than five days in the notice to Thomasson to appear December 4th. Certainly a reasonable time "before the *date*" set for the hearing would not be notice to appear on the same day the notice was served. Besides the notice to appear December 4th would not authorize a hearing November 27th, seven days earlier.

The respondent asserts other inadequacies and infirmities in this notice. It is unnecessary to consider these matters because the notice on its face would not authorize a hearing on the day it was served.

The record recites "that said Hugh W. Thomasson was duly notified of this proceeding and that he could be present and represented by counsel if he so desired."

It seems to be contended by relator that such finding in the judgment itself is conclusive that Thomasson was duly served with notice as required by statute. Such a recital, however, in the judgment itself must give way to actual facts presented in the notice served. [Crow v. Meyersieck, 88 Mo. l. c. 415; Bell v. Brinkmann, 123 Mo. 270, 27 S. W. 374.] Besides a five days' notice could not have been served, nor a one day's notice "before the date set for such hearing" November 27th. "The alleged insane person must be notified of *the proceeding* by written notice." There was no "*proceeding*" of which to give notice, until the information was filed, the day the notice was served.

On the same day the judgment was set aside on the ground that Thomasson was not present in court "at the aforesaid hearing." Again there was an adjudication and a recital "that said Hugh W. Thomasson was duly notified of these proceedings and that he could be present and be represented by counsel." That recital could not be true. If there was any such notice of that later proceeding on the same day it must have been served the same day *after the other proceeding*. To say that Thomasson was "duly notified" is contradicted by the record itself.

IV. The recital in the proceeding contains a statement signed by Thomasson that he waives the *time* set for appearance in such notice. The recital and the judgment on the second hearing recites that Thomasson presents himself in person in open court, and enters his appearance and refiles his written entry of appearance and ap-

pointment of G. A. Wurdeman as his attorney, that Thomasson in person and by Wurdeman, his attorney, waived the issuance and service of notice and requested immediate hearing. There is nothing in either Section 448 or 450 which authorizes the waiver of notice either by the person alleged to be insane nor by his attorney. He may be represented in the hearing by his attorney or by one appointed by the court, but there is not a word in either section which authorizes him to waive notice or authorize an attorney to appear for him in the absence of notice. The notice is jurisdictional. It is mandatory. [State ex rel. v. Duncan, 195 Mo. App. l. c. 552; Shanklin v. Boyce, 275 Mo. l. c. 14; State ex rel. v. Hodgdon, 251 S. W. l. c. 132; Burke v. McClure, 211 Mo. App. l. c. 452-453; Hunt v. Searcy, 167 Mo. l. c. 182.] Section 450 requires that the person alleged to be insane *must be notified* by written notice. That is mandatory language. An insane person is incapable of entering his appearance as he is incapable of performing any other legal act which would bind him. A licensed attorney appearing in court is presumed to act correctly, but the statute cannot be construed to authorize an attorney to waive a jurisdictional requirement.

The historical development of the imperative requirement of notice, in Section 450, and the reason for it deserve attention. A lunacy proceeding is a civil, as distinguished from a criminal, proceeding; yet it is a proceeding *in personam* by the *State;* the public is interested in the welfare of the person alleged to be insane. [32 C. J. 627-634; State ex rel. v. Guinotte, 257 Mo. l. c. 11, 14, 165 S. W. 718.] The informant who starts the proceeding cannot withdraw the complaint without the consent of the court. [State ex rel. v. Guinotte, l. c. 16, 17.]

The purposed effect of such a proceeding upon the person subjected to the inquiry is to deprive him of his liberty and the control of his property, for which there must be "due process of law." The statute requiring notice must be strictly complied with.

That requirement in said Section 450 acquired its present form in the Act of 1917 (p. 102), reenacting the amendment of 1913. Before that in Revised Statutes 1909, Section 476, relating to notice, read:

"In proceedings under this article, the alleged insane person must be notified of the proceeding *unless the probate court order such person brought before the court,* or spread upon its record of its proceedings the reason why such notice or attendance was not acquired."

That statute was the same in the revision of 1879, and in each succeeding revision down to and including that of 1909.

In Hunt v. Searcy, 167 Mo. 158, 67 S. W. 206, in a collateral proceeding, an adjudication of insanity in the probate court was held

void because the record did not affirmatively show that the person adjudged to be insane had notice though the statute did not provide for notice. [*Ibid.* 1. c. 170, et seq.] The court there reviewed at length the authorities on the subject and placed the necessity of notice upon the due process requirement of the Constitution. That ruling, no doubt, led to the amendment, now Section 450, requiring notice.

In Shanklin v. Boyce, 275 Mo. 5, 204 S. W. 187, this court commenting upon Hunt v. Searcy, 1. c. 15, called attention to the alternative provision for notice, "unless the probate court order such (alleged insane) person to be brought before the court or spread upon the records the reason why such notice or attendance is not required," and held it was void and unconstitutional.

The court quoted from the opinion in the Searcy case, as follows (275 Mo. 1. c. 15):

" 'It is too clear for argument that this qualification and attempted authority for depriving the accused of his liberty or property without notice violates both the State and Federal Constitutions, and does not constitute "due process of law."

" 'But one reason can be suggested for not serving the person to be tried with notice, and that is, that as he is insane, a notice to him would be useless and meaningless. This argument begs the question; for the issue to be tried is whether he is insane or not, and to fail to give him notice, for this reason, is to forestall the very purpose of the inquest. But even if he be a raving maniac, he can appear by attorney or through his friends and see that a proper person is appointed guardian or that proper care is given to his property and to his person.' "

The insanity proceeding attacked in Shanklin v. Boyce, began in 1911, before the statute, Section 450, requiring notice, took its present form.

Plainly there could be no waiver of the jurisdictional requirement of formal notice a "reasonable time *before* the date set for such hearing."

That requirement emphasized and reinforced the conclusion of the court in the Searcy case and the Shanklin case.

The public being involved the necessity of time for the friends and relatives of the person charged to be insane to investigate and prepare for the hearing caused the requirement of notice a reasonable time *before the date* set for the hearing. Even if the formal notice could be waived, *time* could not, and the waiver would have to be a reasonable time before the date.

State ex rel. Bevan v. Williams, 316 Mo. 665, is cited as stating a contrary doctrine: that adjudication may be had without a notice on the appearance and waiver of notice by attorney for the person

charged to be insane. The opinion in that case cites only one Missouri case, Crow v. Meyersieck, 88 Mo. 411, which was decided before the amendment of the section, now 450, requiring that notice be served. Neither the Shanklin case nor the Searcy case, supra, is mentioned. The repealed provision of Section 476, Revised Statutes 1909, requiring in lieu of notice that the person involved be "brought before the court," seemed to have controlled the ruling.

It was stated in the Springfield Court of Appeals as late as 1918, State ex rel. v. Brasher, 200 Mo. App. l. c. 120, that where by order of the probate court a person was arrested on charge of insanity and *brought before the court*, that the bringing before the court offered an opportunity to be heard and was a substitute for notice, directly contrary to the rulings in the Searcy case and the Shanklin case.

The information in the Bevan case was filed February 14, 1921; sixteen days before the adjudication. A summons was issued and served February 14th. This summons was held to be informal and insufficient. Bevans was found to be violent and fears were "entertained by the court and other interested parties that harm may come to him or others." The sheriff was ordered to deliver him into the probate court. He escaped custody and after a week's effort he was put in jail and became so violent that a guard had to be put over him. He was in that condition when the hearing was had two weeks after the information was filed. On the recommendation of physicians his presence was dispensed with. The court proceeded without him, his attorneys were present and announced ready for trial. There were numerous witnesses and a jury trial. The court said, l. c. 673-4:

"In this case there is no suggestion in the record, or out of it, that relator (Bevan) did not in fact appear to the proceeding in which he was adjudged to be of unsound mind by counsel of his own selection; or that his counsel were not given ample time and opportunity to prepare any defense they thought proper or available. . . ."

To say that such circumstances—the official custody of the violent lunatic, the advice of physicians, the ample time to investigate by the insane man's friends, the numerous witnesses sworn, the jury trial—may be a substitute for statutory notice is far from saying that "reasonable notice" may be waived by the person under investigation or by an attorney. None of those circumstances appear in this case. While in the Bevan case no actual injustice was shown we cannot construe it to overrule the cases cited above to the effect that the notice required by Section 450 is jurisdictional, nor construe it to overrule the holding in the Boyce case and the Searcy case. Such a holding would nullify the amendment of the statute requiring notice.

In this case the hurried proceeding in disregard of a notice claimed to have been served, the appearance of the man charged to be insane

on the very day the information was filed, whether before or after an alleged notice was served to appear on a more distant day; *not brought in by the sheriff or an officer of the court and not in official custody,* but brought in by some other unexplained influence or by Wurdeman who appeared *against* him in a former proceeding— the proceeding would be void even under Section 476, Revised Statutes 1909, before the amendment, and under the most extreme interpretation of the ruling in the Bevan case. There was nothing in the entire proceeding as recited in the record to justify the court in summarily, without delay, proceeding to adjudge the man insane. This is a collateral proceeding, but so was the proceeding in the Searcy case and also in the Shanklin case.

V. Judge WURDEMAN in the first proceeding instituted in the Probate Court of St. Louis County on the information of Ella F. Bolles appeared for the informant in direct opposition to the interests of Thomasson. It is stated in relator's brief that Ella F. Bolles was antagonistic to Thomasson and yet Wurdeman represented Ella F. Bolles. It is alleged by respondent in the same return that Wurdeman represented conflicting interests. He represented Terry who, *by order of the probate court which appointed him,* appeared in suits where Thomasson was seeking to cancel his marriage to Grace Mahood and to cancel deeds made at her alleged instance. He represented the Trust Company of St. Louis County, Missouri, in litigation where there was an attempt by the next of kin of Thomasson to set aside the conveyances of property made by him alleged to have been obtained through fraud. The relator in his reply brief takes note of that and says of Wurdeman:

"His representation of Terry in connection with other attorneys is merely the representation of the interests of Thomasson. His representation of the Trust Company of St. Louis County, Missouri, is also representing the interests of Thomasson, and the fact that Thomasson wishes to leave his property in the same status that he placed it, prior to his adjudication, and that such representation is incidentally beneficial to his wife, is certainly not such a condition that the court may take judicial knowledge of as an established or proved dual representation."

Thus there is no denial, but an apology, that Wurdeman appears as counsel in various suits which involve the sanity of Thomasson. In all of them relatives of Thomasson appear in attempts to prevent the alleged wastage of his property or its embezzlement, and in all of them Grace Mahood Thomasson and her trustees and agents represented by Wurdeman, are antagonistic to those blood relatives. Whether one side or the other is right is unimportant in this case. Both sides seek to have Thomasson adjudged insane and each seeks to prevent control of Thomasson by the others. No attorney for either

side of that controversy could rightly represent him. Much less can such an attorney waive any of Thomasson's constitutional or statutory rights. Wurdeman appeared for Ella F. Bolles, informant, against Thomasson in the first proceeding in St. Louis County, and by that act alone is disqualified to appear for him, or waive any of his rights in another like proceeding in the same court.

VI. It may be proper to inquire into the status of the case in the Probate Court of the City of St. Louis. It is alleged by the relator that the service of the notice by the sheriff upon Thomasson, November 28, 1931, was while he was under arrest, in the custody of the marshal of the St. Louis Court of Appeals and in the court-room. The respondent asserts, however, that he was not under arrest nor in constraint in any way, and was in one of the corridors of the building at the time. This dispute raises a question of fact which must be determined by the Probate Court of the City of St. Louis and if no adequate service has been had upon Thomasson that court may issue a proper notice and have it served. It was conceded by counsel for relator in the oral argument that the Probate Court of the City of St. Louis had *partial* jurisdiction on the filing of the information; it had authority to issue notice and continue the case for service. It is claimed that the proceeding in St. Louis County had priority only on the ground that there was waiver of notice and an adjudication November 27th, before any actual service November 28th, of the proceeding in the Probate Court of the City of St. Louis. The record of that court recites the filing of the information, that the court found Thomasson was a resident of the city of St. Louis, and ordered notice served so that inquiry might be had into his sanity. Section 448 requires the court to be "satisfied" that there is "cause for the exercise of its jurisdiction" before it can cause the facts to be inquired into. Whether that finding of a jurisdictional fact is conclusive it is unnecessary to inquire. It is conceded to be sufficient to authorize a continuation of the proceeding. [State ex rel. v. Holtkamp, 218 Mo. App. 440, l. c. 444-5; State ex rel. Life Insurance Co. v. Knehans, 31 S. W. (2d) (St. Louis Court of App.) 226, l. c. 228.] In the latter case it was held that a prohibition was the proper proceeding to determine the conflict between courts of coordinate and concurrent jurisdiction, and determine which has acquired jurisdiction both of the subject-matter and of the parties.

The summary proceeding in the Probate Court of St. Louis County was conducted in such haste and with such disregard of the statutory rights of the party affected that that court failed to acquire the jurisdiction to adjudge Thomasson insane or to appoint Terry his guard-

ian. Terry, for the reasons mentioned, having no valid appointment as guardian cannot maintain this suit.

The provisional rule is therefore quashed. *Henwood, Frank, Ellison, Gantt* and *Ragland, JJ.,* concur; *Atwood, C. J.,* concurs in the result.