CENA CROSS, SAMUEL H. MAPLES, ROBERT N. MAPLES, MOSES D. MAPLES, ABREM A. MAPLES, LESLIE L. MAPLES, AGGIE KIMBREL, ALLIE MAPLES, HORACE SANDERS, CHARLEY W. MAPLES, LORAN L. MAPLES, TIMOTHY L. MAPLES, HERMAN R. MAPLES, JANIE ROGERS, ROSA BOLIN, GRACE BOLIN, Plaintiffs-Respondents, v. HANNAH E. GREENAWAY, DAREL MAPLES, CORNELL MAPLES, MARTHA A. MAPLES, OPAL M. MAPLES, ORVAL MAPLES, LEROY NOE, WILLIAM NOE, BRUCE NOE, Defendants-Respondents, HORACE SANDERS, CLAUDE CARSTEN and ESTHER CARSTEN, Movants-Appellants.— 152 S. W. (2d) 43.

Division Two, June 10, 1941.

*E. M. Wright* and *Moore & Crain* for appellants.

*G. Purd Hays* for respondents.

LEEDY, J.—This is an appeal from an order overruling a motion to set aside a *nunc pro tunc* entry which purports to correct the judgment, records and files of the Circuit Court of Christian County in a partition suit lately pending therein.

The partition suit was instituted November 20, 1937. The parties thereto were twenty-five in number (sixteen plaintiffs and nine defendants), being all of the heirs-at-law of Timothy Maples, deceased, who died seized of the lands therein described, lying in Christian and Stone counties. The petition alleged the respective interests of the parties and prayed that partition in kind be made. The separate answers of the several defendants expressly admitted the allegations of the petition, and prayed the court to grant the prayer of plaintiffs'

petition. An interlocutory decree in conformity with· such prayers was entered at the return term, January 25, 1938, by which commissioners were appointed to make partition as therein adjudged. On March 10, 1938, the report of the commissioners was filed. Thereafter, on March 22, 1938, plaintiffs filed their motion to confirm said report wherein it was alleged, ''That the report of the Commissioners fully complies with the orders and judgments of the court, and that the division of the lands of the plaintiffs and defendants is a fair, impartial and just division of the interests of both plaintiffs and defendants. That there is no objection against the report of said commissioners.'' Whereupon the court confirmed said report, and allowed, and ordered taxed as costs, an attorney's fee to the attorney for plaintiffs.

The next step, and the one ultimately giving rise to the matter at bar, appears from the record to have been taken more than a year thereafter, to-wit, at the May Term, 1939. There is set out in the abstract what purports to be a motion, dated May 22, 1939, ''of the parties plaintiffs'' for a *nunc pro tunc* order ''to correct the description of certain lands belonging to Timothy Maples Estate.'' The motion alleges that a mistake was made by the commissioners in the description of the lands respectively set off to Horace Sanders, one of the plaintiffs, and the heirs of Lorenzo Maples, coplaintiffs, ''the error and mistake being made by the scrivener who wrote the report of the Commissioners;'' that said land (describing one of the parcels) was ''supposed to have been divided equally between the heirs of two of the children of Timothy Maples acre for acre; that the improvements including the house was intended to go with the South tract for the reason that the house had been built with the private money of Lorenzo Maples, who is the deceased heir of Timothy Maples; that Herman R. Maples (and others, naming them) are the heirs of Lorenzo Maples, deceased, and who in this partition suit were to have as their share of said estate, the south half of the above lands, including the house; that this land was surveyed prior to the partition suit by the parties concerned, and such portion of the above tract set out to the respective parties, and that, for some unknown reason the wrong survey or description was given the appraisers who subdivided this land, and there was a mistake in the description of the land; that in order to divide this tract of land equally between the parties, and as it was intended to have been divided, as understood by the heirs of Timothy Maples, the description should have been as follows:'' [Describing the same and the heirs entitled thereto.]

This motion is duly captioned as being in the cause in question, but is unsigned, and bears no stamp or endorsement showing the filing thereof. On the date last mentioned, May 22, 1939, which was the first day of the May term, the court made the so-called *nunc pro tunc* entry in question, as follows: ''Now on this day come the plaintiff by their attorney G. Purd Hayes, and file herein their petition

for a *Nunc Pro Tunc* order to correct the description in the report of the Commissioners filed herein heretofore and the Court after having seen, heard and fully understood said petition doth decree *that the plaintiffs herein correct the description* in question as follows:'' (Italics ours.) [From this point the order is an exact duplicate of the motion last above set out.]

Thereafter, on July 22, 1939, and the same (May) term of said court, the present motion to set aside the aforesaid *nunc pro tunc* entry was filed. The movants therein were Horace Sanders, one of the plaintiffs in the original suit and whose interest was adversely affected by said entry, and Claud and Esther Carsten, husband and wife, (not parties to the original suit) who, it was alleged, on January 6, 1939, acquired by warranty deed from Horace Sanders his interest in the lands set off to him by the final judgment in the partition suit entered January 25, 1938. This motion was continued to the September Term, 1939, at which time the following order was made thereon: ''Now on this day the Court after having seen, heard and fully understood defendants' motion to set aside the *nunc pro tunc* order granted herein heretofore doth overrule the same.'' A motion for new trial was filed and overruled, and the movants appealed.

No attack is made upon the sufficiency of the motion to set aside, and, for that reason, we need not burden this opinion by setting it out. The sole contention urged on the part of respondents is as stated in their brief, which (omitting caption and signatures) consists of five lines, as follows:

''There are no exceptions saved to any order, judgment, or ruling of the Court. Cannot convict Court of error when no exceptions are made and saved.

''Wherefore, the Court should affirm the judgment of the Circuit Court.''

This cryptic statement is not further developed, either by way of argument or citation of authorities.

█ If, by this assignment, it is meant that no exception was saved to the overruling of the motion for new trial, it is sufficient to say that, assuming a motion for new trial were necessary, since the decision of the court en banc State v. Wolzenski, 340 Mo. 1181, 105 S. W. (2d) 905, none is required. █ Nor does appellate procedure require that an exception be saved to the rendition of a judgment under a petition in an original, independent action. [North v. North, 339 Mo. 1226, 100 S. W. (2d) 582, 109 A. L. R. 1061.] █ This brings us to the question as to the nature of the instant proceeding. In the North case, supra, it was held, following established precedents, that a motion to modify a divorce decree is in the nature of an independent proceeding, and the motion is treated as a petition in an original action, and being so treated, no exception need be saved to the order or judgment rendered under such a motion. [Hemm v.

Juede, 153 Mo. App. 259, 133 S. W. 620; Tossier v. Tossier (Mo. App.), 33 S. W. (2d) 995; Steele v. Steele, 85 Mo. App. 224. See, also, State ex rel. Wilkerson v. Kelly, 346 Mo. 416, 142 S. W. (2d) 27, holding a motion to revoke a parole on the ground that the judgment granting parole was procured by fraud was an independent action.] What distinction is to be drawn between a motion to modify a decree and one to set aside? The analogy between the two is so close, for present purposes, as to require the application of the same principle in both. We, therefore, hold that an exception is unnecessary to preserve for appellate review the action of the trial court on the motion in question.

The testimony, if any, on appellants' motion is not preserved by the bill of exceptions, although a bill of exceptions was filed. We look, therefore, to the record proper, and from it we think it conclusively appears that the court was without jurisdiction to make the so-called *nunc pro tunc* entry. In 30 Am. Jur. 876, it is stated "that the power to amend should not be confounded with the power to create, that the office of entering, and the power to enter, a judgment *nunc pro tunc* are restricted to placing upon the record evidence of judicial action which has actually been taken . . . Under this rule, the amendment or *nunc pro tunc* entry may not be made to supply a judicial omission or an error of the court, or to show what the court might or should have decided, or intended to decide, as distinguished from what it actually did decide. The authority of the court in this connection does not extend beyond the power to make the journal entry speak the truth, and may be exercised to supply omissions in the exercise of functions which are clerical merely. . . . A test sometimes used to determine whether an error in a judgment is a judicial or a mere clerical one is whether the mistake relates to something the court did not consider and pass on, or considered and erroneously decided, or whether there was a failure to preserve or correctly represent in the record, in all respects, the actual decision of the court."

There is no claim that any such judgment as the pretended *nunc pro tunc* order purports to make was actually made in the original suit. In fact, it appears upon the face of respondents' own motion and the order itself that it was not so made. This alone is decisive of the case, although there are other reasons why the judgment cannot stand, for it has been held that a "*nunc pro tunc* entry at a subsequent term can only be made of a judgment or order actually made." [State ex rel. v. Hartmann (banc), 330 Mo. 386, 51 S. W. (2d) 22, and cases cited.] The recent case of Wiggins v. Perry, 343 Mo. 40, 119 S. W. (2d) 839, 126 A. L. R. 949, exhausts the authorities, and reaffirms the doctrine of such cases as Burnside v. Wand, 170 Mo. 531, 71 S. W. 337, 62 L. R. A. 427; Clancy v. Luyties Realty Co., 321 Mo. 282, 10 S. W. (2d) 914, and State ex rel. v. Hartmann,

1108

supra, holding a *nunc pro tunc* entry cannot be invoked to "correct a mistake or oversight of the judge, nor be used to correct judicial errors, nor to render a judgment different from that actually rendered, even though the judgment actually rendered was not the judgment the judge intended to render."

The judgment is reversed, and the cause remanded with directions to set aside the *nunc pro tunc* entry of May 22, 1939. All concur.