MARY ANN W. ELLICOTT, appellant,

*v.*

JOHN M. CHAMBERLIN et al., executors of AMPLIUS B. CHAMBERLIN, deceased, respondents.

1. An agreement for a consideration to renounce an executorship, is illegal, because against public policy.

2. Trustees cannot use their relations with trust property to their personal advantage.

3. The law will not aid either party to an illegal contract, but will leave the parties where it finds them.

4. If the contract be executory it will not be enforced, and if already executed, the price paid will not be restored.

On appeal from a decree of the chancellor, whose opinion is reported in *Ellicott* v. *Chamberlin, 10 Stew. Eq. 470.*

*Mr. E. P. Conkling* and *Mr. J. G. Shipman,* for appellant.

*Mr. O. P. Chamberlin* and *Mr. J. N. Voorhees,* for respondents.

The opinion of the court was delivered by

Parker, J.

Elisha Warford executed his will on the 1st day of November, 1862. By the residuary clause he gave to the appellant (who was his only child) all the residue of his estate, both real and personal, to her sole and separate use, to keep the lands devised to her, or have them sold by the executors named in his will, as she saw fit. The persons named therein as executors were George A. Allen and Amplius B. Chamberlin.

Note.—A testator appointed two trustees and executors, but by a codicil he substituted two others. One of the latter retired in consideration of £75 paid him by one of the excluded trustees, and executed a deed appointing the excluded trustee in his place. The court directed the new trustee to be removed, the deed to be canceled, *and the £75 to form part of the assets, Sugden* v. *Crossland, 3 Sm. & Giff. 192.*

An administrator obtaining his appointment by agreeing with some of the next of kin that he would make no charge for his services, cannot afterwards be allowed a commission therefor, *McCaw* v. *Blewit, 2 McCord's Ch. 90; Bate* v. *Bate, 11 Bush 639.*

An agreement to relinquish the right of administration upon the estate of an intestate for a valuable consideration, is against public policy and void, *Bowers* v. *Bowers, 26 Pa. St. 74; Owings* v. *Owings, 1 Harris & Gill 484.* But such contract was held binding and valid in *Ourrigan's Case, 6 Irish Jur.* (*N. S.*) *116; Bassett* v. *Miller, 8 Md. 548.*

A contract by the guardian of C. with C.'s grandfather, to resign his position and allow the grandfather to assume it, in consideration of the grandfather

Ellicott *v.* Chamberlin.

On the 4th day of February, 1868, Mr. Warford executed a codicil to his will, by which he appointed Holcombe Warford as executor in place of Mr. Allen. The codicil differed from the will chiefly in its residuary clause, which *directed* the executors to sell all the residue of the personal and real estate and convert it into money, to be invested by them in city and railroad stocks for the benefit of Mrs. Ellicott during her life. Under this clause they could sell and invest without reference to her wishes.

The testator died in May, 1872, and at the time of his death he was over eighty-seven years of age.

Amplius B. Chamberlin, one of the persons named as executors, was a personal friend of the testator, with whom he had been on very intimate terms for many years, and in whom he reposed much confidence. The will and codicil were executed at his residence, and remained in his possession continuously from the time they were executed until he produced them for probate.

When Mrs. Ellicott was informed of the contents of the codicil she was dissatisfied, because of the absolute power given to the executors by its residuary clause. She filed a *caveat* against the probate of both the will and codicil, and proceedings were instituted before the orphans court to test their validity.

During the pendency of those proceedings, Mrs. Ellicott was

giving C. a child's share of his estate, cannot be enforced, *Cunningham* v. *Cunningham, 13 B. Mon. 24.*

A court of probate will not recognize an agreement whereby certain executors, the defendants in a contest over the will, should renounce and allow the plaintiffs, the other executors, to prove it, *Hargreaves* v. *Wood, 2 Sw. & Tr. 602;* see *Van Meter* v. *Jones, 2 Gr. Ch. 520.*

A contract to pay one a consideration to induce him to administer on the estates of the obligor's father and mother, is not prohibited by law or public policy, and is enforceable, *Clark* v. *Constantine, 3 Bush 652; Wheelock* v. *Looney, 15 N. Y. Week. Dig. 126;* see *Sugden* v. *Crossland, 3 Sm. & Giff. 193.*

A trustee who has accepted a large amount of money to resign his trust under a will, cannot afterwards intervene in order to question a decree setting aside the probate of the will, *Munnikhuysen* v. *Magraw, 58 Md. 557.*

A contract by which one agrees, for the purpose of collecting a claim against an estate, to administer thereon, and to retain for his services one-half of the amount collected, is against public policy, and so far as it remains executory, incapable of enforcement, *Whatley* v. *Hughes, 53 Miss. 268;* see *Spinks* v.

Ellicott v. Chamberlin.

informed that Mr. Chamberlin had said he expected to realize a large profit through the power of sale and investment given him by the codicil. When Mr. Nixon, on behalf of Mrs. Ellicott, served a notice on him, he said he would let her settle the estate if she would give him $25,000. He also told Mr. Nixon that he could make that much money out of it. He told Mr. Tunison he could make $15,000 or $20,000 in settling the estate. When Mr. Tunison asked him how, he replied that he would sell off certain farms, get the money for them, and put it in railroad and city bonds, that there would be a large premium on them, and he would have the premium. These boasting declarations of contemplated improper administration of the estate on the part of Mr. Chamberlin for the purpose of making profit for himself out of his trust, came to the ears of Mrs. Ellicott. He did not hesitate to make the same declarations substantially to Mrs. Ellicott herself. Her son Benjamin says that on more than one occasion he heard Mr. Chamberlin say to his mother, when asked whether he had any interest in the estate more than his lawful fees and commissions, that he could make $20,000 in settling the estate, selling the different pieces of property, and investing the money as directed in the codicil, and that he would do it. Influenced by these and other similar expressions of Mr. Chamber-

Davis, 32 Miss. 152; Page's Estate, 57 Cal. 238; Birt's Case, 48 L. T. (N. S.) 67.

An agreement by a director of a corporation to resign his trust for a pecuniary consideration, and to assist his obligors in electing a successor favorable to them, is void, Fremont v. Stone, 42 Barb. 169; Havemeyer v. Havemeyer, 43 N. Y. Sup. Ct. 506; Jones v. Scudder, 2 Cin. S. C. 178; Noel v. Drake, 28 Kan. 265, 26 Alb. L. J. 443.

F. and E. were co-trustees of a minor's estate, and verbally agreed that, in consideration of F.'s being permitted to employ the trust fund in trade on his own account, he would pay the interest thereon to the minor, and would also pay E. $150 a year for three years. E. took part of the $150 for the first year.—Held, that F. could not recover from E. what he had already received, but so far as the contract was executory it was void, Foote v. Emerson, 10 Vt. 338.

Two persons equally entitled thereto may agree to take out joint administration, and that, as one of them is to bear the principal labor and responsibility, the other shall receive such commissions as his associate thinks he deserves,

lin, which came to her knowledge, Mrs. Ellicott became anxious
to have him renounce his executorship, and negotiations were
opened with that end in view. After numerous interviews
between the parties on the subject, it was agreed that Mr.
Chamberlain would renounce upon payment to him of the sum
of $10,000, together with costs and counsel fees. On the 28th
of March, 1874, he signed a formal renunciation. The other
executor also renounced, but without any compensation, or prom-
ised remuneration therefor. The *caveat* was withdrawn, and Mrs.
Ellicott, who has acted as administratrix *pendente lite* since the
filing of the *caveat*, was appointed administratrix *cum testamento
annexo*.

Mrs. Ellicott, in fulfillment of the agreement, paid Mr.
Chamberlin, for counsel and costs, over $1,000. She also paid him,
at one time, in cash, $200, and at another time $150, on the
agreement. In March, 1874, she paid him $4,611.88, and he gave
her a receipt, in which he acknowledged the payment of that
sum, " on account of my renunciation as executor of the last will
and testament of Elisha Warford, deceased." As part of the
payment last mentioned, Mrs. Ellicott assigned to Mr. Chamber-
lin, a bond and mortgage given to her by Peter A. Yawger for

---

*Brown* v. *Stewart, 4 Md. Ch. 368 ;* see *Squier* v. *Squier, 3 Stew. Eq. 627 ; Aston's
Estate, 5 Whart. 228 ; White* v. *Bullock, 4 Abb. App. Dec. 578.*

A husband agreed, by a deed of separation, that if his wife died intestate,
her next of kin should be entitled to the property which she received under
the deed. She afterwards died intestate, and the court, notwithstanding her
husband's objection, granted to her father letters of administration limited to
that property, *Allen* v. *Humphreys, L. R. (8 P. D.) 16 ;* see *Willis* v. *Jones, 42
Md. 422.* The same rule applies to ante-nuptial settlements, *Ward* v. *Thomp-
son, 6 Gill & Johns. 349 ; Maurer* v. *Maurer, 5 Md. 324; Fowler* v. *Kell, 14
Sm. & Marsh. 68 ; Bray* v. *Dudgeon, 6 Munf. 132 ; Charles* v. *Charles, 8 Gratt.
486 ; Gackenback* v. *Brouse, 4 Watts & Serg. 546 ;* see *Hart* v. *Soward, 12 B.
Mon. 392.*

As to other contracts for selling an office or its salary, see *Combs* v. *Brash-
ears, 6 J. J. Marsh. 631; Fawrie* v. *Morin, 4 Mart. 39 ; Salling* v. *McKinney, 1
Leigh 42 ; Haralson* v. *Dickens, Car. L. Repos. (66) 163 ; 4 Cent. L. J. 122 ;
O'Rear* v. *Kiger, 10 Leigh 622 ;* also *Bush* v. *Thornton, 25 Hun 456, 466 ; Olin*
v. *Bate, 98 Ill. 53 ; Holland* v. *Helm, 7 Gratt. 245 ; Foott* v. *Bullock, 4 U. C.
Q. B. 480 ; Bliss* v. *Lawrence, 58 N. Y. 442 ; Beal* v. *McVicker, 8 Mo. App.
202 ; State Bank* v. *Hastings, 15 Wis. 75.*—REP.

the payment of $1,300. The payments hereinbefore mentioned made up the sum of $5,000, and for the remaining $5,000, she gave him a promissory note dated March 28th, 1874, payable on or before the 1st day of April, 1875, with interest from the 1st day of April, 1874. On the 2d of January, 1875, there was paid on this note the sum of $2,500, and also one year's interest. No other payments have been made on the note, or on the agreement from which the note originated.

Amplius B. Chamberlin died in the spring of 1879. His executors (the respondents), soon after his death, commenced an action in the circuit court of the county of Hunterdon to recover the balance of said note, whereupon Mrs. Ellicott filed a bill in the court of chancery to restrain the suit on the note. The bill also prays for a decree compelling the executors of Amplius B. Chamberlin not only to surrender to her the said note, but to repay her the money she has paid on the same, and also the money she has paid on the contract for renunciation of the executorship, and to re-assign to her the Yawger bond and mortgage.

The chancellor dismissed the bill, and from his decree Mrs. Ellicott appeals.

There is no doubt that the agreement of Mr. Chamberlin to renounce for a consideration was illegal, not because of fraud or duress, as was urged before the chancellor, but because it is against public policy. It is a general principle, universally enforced, that trustees cannot use their relations with trust property to their personal advantage. An agreement to accept money or other valuable thing as consideration for violating or abandoning a trust, is illegal. A person named in a will as executor is not obliged to accept. He may voluntarily renounce for reasons that do not involve mercenary motives, but he has no right to make merchandise of the confidence reposed in him by a testator.

In the case of *Porter* v. *Jones*, reported in *52 Mo. 399*, it was held that a promissory note, whereof the consideration was an agreement to resign as administrator, with the view of having another appointed, was void as against public policy. The court said, in that case, that the agreement amounted to trafficking

39

with an important trust; and although an administrator was not a public officer, yet he held a private trust as sacred.

In *Staunton* v. *Parker, 19 Hun 55,* it was decided that an agreement to renounce an executorship for a consideration was void. The matter came before the court on appeal from an order of a surrogate, holding the renunciation invalid. The court, in its decision, adopted the language of the surrogate, who said " that an executor had the undoubted right to renounce, of his own motion, but a renunciation for a consideration, a renunciation purchased in any manner, is another matter. If agreements of this nature are to be enforced, then testators may well doubt, not only as to who will carry out their wills, but whether they will be carried out at all. The door might then be opened to fraud and corruption on the part of designing men and intriguing descendants, and to imposition on confiding testators."

A trust is regarded as a matter of honor and conscience, and not to be undertaken with mercenary views. *Manning* v. *Manning, 1 Johns. Ch. 527.*

In the case last cited, the chancellor, in discussing the question of commissions and compensation to trustees in general, observed " that if the rule applied with more force and propriety to one kind of trust than another, it was that of an executor who gives no security and who is selected by reason of some special and sacred confidence, resulting from ties of kindred or friendship, and charged by the testator in his dying moments with interests of the greatest human concern, and which the testator is on the eve of renouncing forever. The request of a testator in such case is the supplication of a friend."

I cannot conceive of anything more likely to undermine confidence and more directly opposed to public policy than to allow the partiality and friendship of testators, manifested in choosing those whom they wish to settle their worldly estates, to be made the subject of merchandise. There could not be a more marked violation of trust than such traffic.

On the part of the respondents it is urged that the whole sum of $10,000 was not paid to procure Mr. Chamberlin's renunciation of the executorship, but that the money was to be paid in part

Ellicott *v.* Chamberlin.          •

for services he had rendered the deceased, for advice and assist-ance to be given Mrs. Ellicott in settling the estate as adminis-tratrix with the will annexed, and for going on her bond as one of the sureties. The evidence does not sustain this view, but shows that the money was to be paid wholly for the renunciation. But even if services performed or to be performed on the part of Mr. Chamberlin had entered into the contract, it was void. A contract is void if only a *portion* of the consideration is illegal as against public policy. It has been held that a contract based wholly or *partly* on an agreement of a trustee of a corporation to resign his trust for a consideration, is illegal. He may resign when he chooses, but he must not make any profit to himself by his resignation. *Forbes* v. *McDonald, 54 Cal. 98.*

It was the duty of Mr. Chamberlin either to renounce volun-tarily, without consideration, or to endeavor to prove the will and codicil; and, after the *caveat* was withdrawn, to assert his rights as executor and proceed with the settlement of the estate entrusted to him by the testator. Instead of doing this, proceedings to probate the will and codicil were delayed, and he entered upon the effort to sell his trust. The price demanded at first was enormous, and the price obtained at the close of the barter was exorbitant. He could not possibly have been allowed one-third of the amount he received, in commissions, if he had settled the estate. He performed no service and incurred no risk. It is not the amount of the profit that determines the illegality, for a trustee is not allowed to make any profit out of his trust. The old English rule was to deny even commissions, on the theory that a trusteeship was a matter of honor, not to be compensated by money.

In New Jersey, commissions are given by statute, which, while it fixes rates beyond which they will not be allowed, also pro-vides for their forfeiture by misconduct, or by neglect to state and settle accounts within the time limited, so that it cannot be said that an executor is entitled to any compensation until his duties have been fully performed, and allowance has been made by order of the court.

There is no doubt that Mrs. Ellicott could have successfully

resisted payment of any part of the money she agreed to give Mr. Chamberlin for the renunciation of his executorship, had she interposed defence. But she chose voluntarily to pay the greater part of the money, and she cannot now recover what she has paid. She was a participant in an illegal contract for the purpose (as the evidence shows) of obtaining for herself the administration of the estate.

If a contract be illegal as against public policy, its invalidity will be a defence while it remains unexecuted. If the illegal contract be in part performed and money has been paid in pursuance of it, no action will lie to recover the money back. *Smith on Contracts 259.*

The law will not assist either party to an illegal contract, and the parties being *in pari delicto*, it will leave them where it finds them. If the contract be still executory, it will not enforce it, and if already executed it will not restore the price paid nor the property delivered. *Setter* v. *Alvey, 15 Kan. 157.*

Mrs. Ellicott cannot, therefore, compel the repayment of the money she gave Mr. Chamberlin on the agreement or on the note, nor can she compel the assignment to her of the Yawger bond and mortgage, as prayed for in her bill. To that extent the contract has been executed, but she can resist the payment of the balance of the note, for which suit has been brought. Her defence to the note can, however, be made in a court of law, and therefore the suit in the circuit court, already commenced, should not be enjoined.

The bill was properly dismissed by the chancellor, without costs.

The appellant will not pay costs in this court.

The decree is affirmed.

*Decree unanimously affirmed.*