WILLIAM T. NUTE, Appellant, v. J. CLARENCE FRY and ROBERT W. PRINGLE, Executors of the Estate of GEORGE H. NUTE.—125 S. W. (2d) 841.

Court en Banc, March 7, 1939.

*T. N. Haynes, J. C. Hargus* and *Farrar & Phillips* for appellant.

164

*Louis A. Laughlin* and *James H. Harkless* for respondents.

BOHLING, C.—William T. Nute, Jr., instituted this action on a demand, based on a parol contract, for $25,000 against the estate of George H. Nute, deceased. Cast on demurrer at the close of all the evidence, he appeals. The contested issues presented for review are: Was the contract against public policy and void? Was the party with whom the contract was made a competent witness? Was there substantial evidence establishing the contract?

William T. Nute, Sr., and George H. Nute were half brothers and partners in a livestock brokerage business in Kansas City, Missouri. Each was married. William T's son, William T. Jr., was born December 21, 1909. The partnership was dissolved by William T., Sr., death on September 13, 1911; his widow, Hazel Nute, and his son surviving him. Hazel Nute married a Mr. Kelly in 1917. George H. Nute's wife died in 1924.

The contract, as stated in appellant's brief and as established by the testimony of Hazel Nute Kelly, whose testimony on the issue was excluded on the ground she was not a competent witness, was that George H. Nute came to Hazel Nute about ten days after the death of William T. Nute, Sr., and said: " 'Hazel, I can't let you take my brother's money out of the firm of Nute Brothers, it will greatly injure my business. If you will agree to let me act

as Willie's [meaning plaintiff's] guardian and to leave his share of his father's business in my business I will agree to pay him six per cent interest and give him $25,000 when he is of age. Your husband, my brother, is remembered in my present will for the sum of $25,000.. Now if you will agree to my proposition I will have my attorney, Mr. Laughlin, make a new will in which I will give the $25,000 to Willie,' meaning my son, 'and if I live, if I am living when Willie is twenty-one years of age I will pay him $25,000 and every dollar of his share of his father's estate and if I die before he is twenty-one my will will protect him.' '' Hazel Nute told George Nute she accepted his proposition; and upon said agreement William T. Nute, Jr., based his demand. Therefore, on October 14, 1911, Hazel Nute waived her rights as curatrix of the estate of her minor son, and George H. Nute was appointed and qualified as curator of said estate. Hazel Nute administered the estate of William T. Nute, Sr., deceased. Upon William T. Nute, Jr., attaining his majority, December 21, 1930, George H. Nute made final settlement of said curatorship. No contention is presented that he failed to faithfully and fully discharge his duties as curator, and the record discloses no mention of said $25,000 in connection with said final settlement or subsequent thereto until the filing of the demand here involved. George H. Nute died September 28, 1931, childless. His last will and testament bears date of February 14, 1931. He never paid or made provision for paying said $25,000.

Assuming the establishment of the agreement relied upon by competent testimony, the action involves a promise made by a promisor to a promisee for the benefit of a third person. Hazel Nute was the natural guardian and curatrix of William T., Jr., and in the event of her failure to qualify the probate court was vested with the discretion of appointing some competent person to act as curator [consult Secs. 403-406, R. S. 1909.] The consideration supporting said promise embraced, among others, the condition that Hazel Nute renounce her rights as curatrix of her minor son's estate and the further condition that George H. Nute be appointed and act as curator of said estate. Respondent asserts this was a trafficking in public office and renders the whole agreement void. Appellant, stressing only that portion of the agreement relating to the use of the assets of the estate in the business, says the agreement was not corrupt, but does not discuss authorities bearing upon the issue that contracts amounting to a trafficking in public office are unenforceable.

Porter v. Jones, 52 Mo. 399, 402, 403, arose out of a contract whereby plaintiff, in consideration of an indebtedness evidenced by defendant's note, agreed to secure a responsible individual to administer an estate or assume or cause to be assumed all liabilities, liens or indebtedness of the estate. The court, in holding the trans-

action a trading in the appointment of an administrator and void as against public policy, said: "Parties have no right by agreement to attempt to control the discretion of the probate court, or the clerk in the exercise of this discretion [the appointment of the person considered most suitable as administrator]. . . . This agreement amounts to a trafficking in this important trust. Although it is not a public office, it is nevertheless a private trust just as sacred, and arises from an appointment to be made by a public court or officer. An agreement to procure an appointment to office is against public policy and void. The trust devolved upon an administrator through the appointment of a public functionary, ought to have the same safeguards thrown around it as if [it] were a public office." In Re Irwin's Estate, 123 Mo. App. 508, 512, 100 S. W. 565, 566, a public administrator agreed to administer an estate for $750 in consideration that no objection be interposed to his acting as administrator. The court, in the administrator's action for allowance of the statutory commission, held, speaking to that portion of the agreement providing for the interposition of no objection: "This was trafficking in the office of the administrator, which was void as being against public policy."

In Cunningham v. Cunningham, 18 B. Mon. (57 Ky.) 19, 24, a promisor (testator) died without changing his will, within a short time after the making and prior to the performance of a contract under which the promisee was to resign as guardian of his ward that the testator might be appointed in his place and thereby acquire control of the person and estate of the ward, upon consideration that the testator would give the ward a third part of his estate. The court observed: ". . . contracts of such a character are against public policy, and cannot be countenanced in a court of justice."

In Aughey v. Windrem, 137 Iowa, 315, 320, 114 N. W. 1048, 1049(2), it appears that Windrem agreed for a consideration to resign his guardianship of a person of unsound mind and to use his influence to secure the appointment of another, or a person selected by such other. The court said: "The principle that a contract to resign a public office or to exert influence to secure the appointment of another is void as against public policy has been too long established to require the citation of authority for its support. . . . The guardian of a minor or lunatic is not a public officer, yet he is in the exercise of a trust quite as sacred. . . . An agreement for a valuable consideration to abandon the trust or to transfer it to another is void."

Bowers v. Bowers, 26 Pa. St. 74, 77, 67 Am. Dec. 398, 399, is to like effect, stating: "If public policy forbids traffic in the office of postmaster, . . . it will, for superior reasons, interdict barter in respect to the more sacred trust of administration." [Consult, also, In re Cumming's Estate, 89 Mont. 405, 412, 298 Pac. 350,

352(1); In re True's Estate, 120 Cal. 352, 52 Pac. 815, Ellicott v. Chamberlin, 38 N. J. Eq. 604, 611, 48 Am. Rep. 327, 331; Oakeshott v. Smith, 104 App. Div. 384, 388, 93 N. Y. Supp. 659, 662, affd. in 185 N. Y. 583, 78 N. E. 1108; Currier v. Clark, 19 Colo. App. 250, 74 Pac. 927.]

Any right of William T. Nute, Jr., is founded on the contract declared upon between George H. Nute and Hazel Nute. The consideration moving between said parties is entire and not severable. Performance was conditioned upon the several mutual promises involved. As to Hazel Nute's renunciation of her rights as curatrix and George H. Nute acting as curator, William T., Jr., was, as of the date of the contract, a donee beneficiary. The agreement to renounce and the agreement to appoint and act entered into said contract. Had Hazel Nute refused performance, George H. Nute could not have successfully maintained an action to enforce performance or for breach of said contract. To hold, in effect, that Hazel Nute could have enforced the agreement against George H. Nute would give validity to an agreement not mutually binding upon the parties. Under the facts and issues involved in the instant case, George H. Nute, during his lifetime, and his representatives, subsequent to his death, may assert defenses available against the original promisee. Under the authorities cited the agreement involved was against public policy and unenforceable.

Entertaining this view of the case, no occasion exists for us to consider respondent's contentions that Hazel Nute Kelly was not a competent witness, or that there was no substantial evidence to sustain the contract declared upon.

The judgment is affirmed.

## ON MOTION FOR REHEARING.[*]

PER CURIAM:—Able counsel for appellant earnestly contend Brandenburger v. Puller, 266 Mo. 534, 540, 181 S. W. 1141, 1143, is decisive of the issue ruled. We think not; especially in view of the comment (l. c. 540 and 1142, respectively) in the Brandenburger case distinguishing Porter v. Jones, 52 Mo. 399, as being "determined upon grounds of public fraud—the trafficking in appointments of administrators, and the corrupt procuring of an appointment to an office of trust." The Brandenburger case held a petition founded upon a contract effecting a settlement between the contestants and certain proponents of a will was not against public policy and stated a cause of action. After the contestants announced

---

[*]This cause was first submitted in Division No. II. The foregoing "Per Curiam" opinion was filed in Division No. II on May 7, 1938, in connection with the overruling of the motion for rehearing in said Division. Thereafter, on December 20, 1938, and on the Court's own motion in Division No. II the cause was transferred to Court en Banc.

in court the terms and purposes of the compromise and their desire to discontinue the action, a party proponent was permitted to plead as contestant and prosecuted the action to judgment. This court stated the rule that a contestant cannot dismiss a will contest until due proof of its execution has been made recognized the right of a contestant to compromise his own claim and that under the pleaded facts no actual fraud resulted upon other parties to the litigation who had theretofore refrained from filing suit because of the suit instituted by the compromising contestants. That case unequivocally states (l. c. 541 and 1143, respectively): "We know of no rule of public policy which requires a person to contest his ancestor's sanity, or to continue a costly suit to the depletion of his own funds and those of the estate after his own rights have been conceded and secured." With the Brandenburger case distinguishing the Porter case and not questioning its holding that contracts trafficking in the appointment to an office of trust to be void upon grounds of *public* fraud, it, the Brandenburger case, clearly does not rule a case involving a contract trafficking in the office of a curatorship.

Is the purchase of a private trust held in law as sacred as a public office sanctioned by the law of Missouri? Hard cases sometimes make bad law and it may be that a hardship was worked upon plaintiff; but if so, the administration of the curatorship standing unquestioned, any hardship involves only the alleged contract right. Contracts against public policy should not be ruled according to whether the purposes and objectives are meritorious or otherwise so long as the law holds such contracts void for so to do would permit the governmental functionary charged with the determination of the issue to disregard the mandate of the law and substitute his individual whim as to the meritoriousness of the objectives for the governing principle of law. We think the law announced in the Missouri cases, as well as others, mentioned in the opinion is against appellant; and appellant advances and we perceive no justifiable reason for departing therefrom.

The motion for rehearing is overruled.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the Court en Banc. All the judges concur, except *Ellison* and *Leedy, JJ.,* who dissent.