The Boatmen's National Bank of St. Louis, a Corporation, Administrator of the Estate of Hugh W. Thomasson, Appellant, v. G. A. Wurdeman and Richard Henry Stevens.—127 S. W. (2d) 438.

Division Two, April 20, 1939.

Edward C. Crow for appellant.

*John A. Nolan* for respondents.

WESTHUES, C.—Appellant bank filed a suit to enjoin the sale of real estate under a deed of trust. A temporary injunction was sought, which was denied, and a sale was had. Thereafter appellant filed an amended petition seeking the cancellation of the trustee's deed, five notes and the deed of trust given to secure them. The trial court entered a judgment against appellant bank whereupon an appeal was taken.

Appellant, plaintiff below, was the administrator of the estate of Hugh W. Thomasson, deceased. The respondents, defendants below, were G. A. Wurdeman, owner of the notes and deed of trust in ques-

tion, and the purchaser of the property at the sale, and Richard Henry Stevens, trustee in the deed of trust. The notes and deed of trust sought to be canceled were executed by Hugh W. Thomasson, and made payable to the law firm of Wurdeman, Stevens & Hoester. Appellant contends that the notes and deed of trust were void in their inception. The circumstances attending their execution, for the most part conceded, were as follows: Hugh W. Thomasson, a man of means, was more than seventy years of age at the time the notes and deed of trust were executed. That occurred on May 19, 1931. His nearest relations were second cousins. He had been living in the home of a cousin, a Mrs. Bolles who lived in St. Louis, Missouri, but left there sometime during the year 1930. Thomasson had executed a will wherein he had made some provision for Mrs. Bolles. That testament was being contested at the time this case was tried and withstood the assault made upon it. [See Townsend et al. v. Boatmen's Natl. Bank et al., 340 Mo. 550, 104 S. W. (2d) 657.] Mrs. Bolles and others believed that after Thomasson left the home of Mrs. Bolles he became infatuated with one Grace Mahood, who was referred to by some witnesses as an ''adventuress'' or ''gold digger.'' Mrs. Bolles became alarmed that this woman would eventually obtain all of Thomasson's property. On January 25, 1931, a deed was filed for record whereby Thomasson had conveyed some property to Grace Mahood. It appears that Thomasson and Grace Mahood had married. That there was a valid marriage was not conceded by all parties, not even by Thomasson. A suit was filed on his behalf to annul the marriage. Reference to a number of lawsuits between Thomasson and his alleged wife were referred to in the case of State ex rel. v. Holtkamp, 330 Mo. 608, 51 S. W. (2d) 13, which case involved another insanity proceeding against Thomasson. Mrs. Bolles employed the firm of Wurdeman, Stevens & Hoester and an insanity proceeding was instituted on January 27, 1931, in the probate court of St. Louis County. No service of process could be had, or notice served upon Thomasson, because he could not be located within the county. Later, February 13, 1931, the proceeding was dismissed. On March 17, 1931, it was reinstated on the docket. S. C. Rogers, an attorney who had represented Thomasson in some legal matters, entered voluntary appearance for Thomasson and waived service of notice and jury. The case was heard immediately, Thomasson was adjudged insane and the court appointed a guardian over the person of Thomasson and his property. The record does not disclose that Thomasson had employed Rogers to represent him in the insanity proceedings, or that he authorized him to enter his appearance. The history of this proceeding and Rogers' explanation for entering an appearance will be found in State ex rel. v. Holtkamp, 330 Mo. 608, 51 S. W. (2d) 13, l. c. 15. Thereafter Robert B. Denny, an attorney, perfected an appeal from the judgment in the probate court to the circuit court. While this

appeal was pending in the circuit court Denny, representing Thomasson, and Wurdeman, Stevens & Hoester, representing Mrs. Bolles, negotiated for a dismissal of the insanity proceeding. The outcome of these negotiations was that Thomasson executed an instrument, referred to as an annuity contract, whereby it was agreed that Mrs. Bolles should receive the sum of $100 per month during her life and $500 at her death. The will of Thomasson had provided for similar payments to Mrs. Bolles. In addition to this Thomasson executed two notes of $2500 each and some interest notes, also deeds of trust on property in St. Louis County to secure their payment. These notes were made payable to Wurdeman, Stevens & Hoester and were purported to be given as an attorney's fee in the insanity proceeding. This proceeding was then dismissed with the consent of the court. The court was not informed of the so-called settlement. The defendant, Wurdeman, became the sole owner of one of these $2500 notes and the interest notes which are involved in this suit. Later Thomasson died. In due time Wurdeman proceeded, through the trustee, to sell the property for the purpose of forcing a collection of his notes. Plaintiff, as administrator of the estate of Thomasson, filed suit to enjoin the sale. Temporary injunction was denied and Wurdeman became the purchaser of the property. Plaintiff's petition was duly amended to meet the new situation confronting it and sought relief.

The statement of the case, as above set forth, suggests to a court of equity that plaintiff should be granted the relief prayed for. In the first place an insanity proceeding is not a suit to determine rights between the informant and the person informed against, and no personal judgment can be rendered in favor of the complainant. In State ex rel. v. Guinotte, 257 Mo. 1, l. c. 14, 165 S. W. 718, this court quoted the following with approval:

" 'The primary object of the proceeding is not to benefit any particular individual, but to see whether the fact of mental incapacity exists, so that the public, through the courts, can take control. The petitioner can derive no direct benefit from it. The advantage to him, if any, is only such as would result if any other person had first acted in the matter.' "

The prime purpose of an insanity proceeding is to provide for the welfare of the person alleged to be insane and preserve his property. The public is also directly interested. [State ex rel. v. Holtkamp, 330 Mo. 608, 51 S. W. (2d) 13, l. c. 19 (14, 15).] That any individual should attain an advantage over the alleged insane person in the way of pecuniary gain is foreign to the theory of such a proceeding. [See 32 C. J. 628, sec. 164.] It was held in State ex rel. v. Holtkamp and State ex rel. v. Guinotte, supra, that an insanity proceeding cannot be dismissed without the consent of the court. In this case consent of the court was obtained. However, the court was not informed that a settlement was made whereby the informant obtained a pecuniary

advantage over the alleged insane person; that her attorneys were given $5,000 in notes, signed by the alleged insane person. Had the court been so informed it is unthinkable that the case would have been dismissed on any such basis. ■ The judgment of the probate court, declaring Thomasson insane, was void because no notice had been served. In State ex rel. v. Holtkamp, supra, this court held that written notice must be served on the person whose sanity is the subject of inquiry; that such notice is jurisdictional and cannot be waived by an attorney.

■ An insanity proceeding cannot be prosecuted or used as a wedge to pry a settlement of any real or fancied claim that a person may have against the alleged insane person. That, however, was the only purpose which prompted the insanity proceeding here involved. This purpose was clearly disclosed by the testimony of one of the attorneys representing Mrs. Bolles when he was being questioned as to why the proceeding was instituted. Note the answer given:

"Well, she was wanting to get some income from his estate on the theory that the woman he had married, I might say was recognized as a 'gold digger,' and the theory was she would get it all if somebody else didn't."

That expresses the true situation. At another point in the examination of this attorney the following appeared:

"Q. You testified that you brought this insanity information to protect Thomasson against this woman so she wouldn't get all the money? A. That was the ultimate idea."

If that was the ultimate idea no effort was made to carry it out. The proceedings were dismissed when Mrs. Bolles, through a deed of trust on valuable property belonging to Thomasson, was guaranteed an annuity of $100 per month and $5000 in notes, secured by deeds of trust given to her attorneys. Thomasson was left just where he had been prior to the institution of the proceeding, except that he had been relieved of some property. In other words, the lamb was rescued from the wolves long enough to permit the rescuers to shear what fleece they wanted then turned loose to be fleeced by others. It is evident that the contract to dismiss the insanity proceedings, whereby the informant and her attorneys obtained the property mentioned, was void as against public policy; also that the notes and deeds of trust given to obtain such a dismissal were void. Such contracts should have no standing in court. To recognize and enforce them would open the door to fraud. Contracts have been held to be against public policy which were much less vicious than the one now before us. For a recent case see Nute v. Fry et al., 344 Mo. 163, 125 S. W. (2d) 841, where the question of contracts being against public policy was discussed. [See also Porter v. Jones, 52 Mo. 399.] In 13 Corpus Juris, 445, section 382, we note the following:

"Agreements calculated to impede the regular administration of

justice are void as against public policy, without reference to the question whether improper means are contemplated or employed in their execution. The law looks to the general tendency of such agreements, and it closes the door to temptation by refusing them recognition in any of the courts of the country.''

The judgment of the trial court is therefore reversed with directions to that court to enter a decree for plaintiff as prayed for in its amended petition. *Cooley* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.