In the Matter of Louise FLAIR, an Alleged Disabled Person, Appellant,

v.

Phyllis CAMPBELL and Marilyn Schmidt, Pettis County Public Administrator and Appointed Limited Conservator for Louise Flair, Respondents.

No. WD 58361.

Missouri Court of Appeals, Western District.

May 1, 2001.

Daniel R. Dunham, Columbia, for appellant.

R. Scott Gardner, Karen M. Hunt, Sedalia, for respondents.

Before ELLIS, Presiding Judge, LOWENSTEIN, Judge and BRECKENRIDGE, Judge.

ELLIS, Presiding Judge.

Appellant Louise Flair appeals from a judgment entered in the Circuit Court of Pettis County, Missouri appointing Respondent Marilyn Schmidt, the Pettis County Public Administrator, to serve as a limited conservator of Appellant's estate following a competency hearing on November 9, 1999. This judgment was rendered upon a petition for appointment of a guardian and conservator for Appellant filed by Respondent Phyllis Campbell, Appellant's niece.

At the time of the hearing, Appellant was a 92–year–old woman who lived in a house owned by her sister in Sedalia, Missouri. She had been living there for about two years.

In July or August 1999, a woman introduced Appellant to Billy Joe Allen and recommended him for some work that needed to be done in Appellant's yard. Appellant had Allen trim her evergreens and cut out some stumps and bushes for her. After he performed those duties, in the days that followed, Appellant had him perform some other work around the house. Shortly thereafter, Appellant asked Allen to move into her home to take care of her, perform jobs around the house, and to drive her around town. Appellant told Allen that she would take care of his needs. Allen, who lived in a mobile home at the time, agreed to move in with Appellant and stopped doing work for oth-

er people so he would be available when Appellant needed him.

On September 25, 1999, Campbell came to visit Appellant from her home in Chesterfield, Missouri. She noted that Appellant looked wonderful and seemed to be in a very good mood. She also noticed that the house appeared to be clean and well kept.

On September 30, 1999, Appellant purchased a new 1999 Chevrolet Cavalier convertible and gave it to Allen as a gift. On October 5, 1999, Appellant cashed in a $6,000.00 certificate of deposit at her bank and gave the proceeds ($5,743.90) to Allen to establish a checking account.

Subsequently, Campbell received a call from one of her other aunts who asked her to come to Sedalia because "something was going on." Upon returning to Sedalia, family members informed Campbell that they thought Allen was exploiting Appellant. They told her that Appellant had paid Allen $1,000.00 for cutting down a tree and cleaning out her basement and that she subsequently bought him a new convertible. Upon hearing this information, Campbell reported this situation to the Sedalia Police Department.

On October 13, 1999, Detective Monte Richardson of the Sedalia Police Department and Elaine Hesse of the Pettis County Division of Aging met with Appellant and Allen. Campbell was also present. During the course of this interview, Hesse noted that Appellant was rather vague in her answers and opined that her memory was deteriorating. She noted that Appellant incorrectly told her that she had been living at that house for 12 years, that she would not tell her the year in which she was born, and that Appellant could not remember whether she had paid for the convertible with a check or with

cash. Based upon their discussions with Appellant and Allen, Richardson and Hesse recommended that Campbell talk to Appellant's doctor to ascertain his opinion regarding her competency.

On October 14, 1999, Campbell filed a petition in the Circuit Court of Pettis County alleging that Appellant was incapacitated and disabled, and in need of the appointment of a guardian and conservator. She prayed that she be appointed in both capacities. She also filed a petition pursuant to § 475.355[1] to temporarily detain Appellant, to freeze Appellant's assets, to repossess the convertible, and to remove Allen from Appellant's residence. That same day, the Circuit Court issued its order freezing Appellant's assets and empowering Campbell to remove Appellant from her home until a hearing could be held on the petition for appointment of a guardian and conservator. The court also set the hearing for November 9, 1999, and appointed an attorney to represent Appellant at the hearing.

Also on October 14, 1999, the clerk sent a "Notice to Respondent" to the Civil Courier Service for service upon Appellant. On October 15, 1999, a private process server employed by the Civil Courier Service personally delivered the "Notice to Respondent" to Appellant at her residence.

Subsequently, Allen took Appellant to Columbia, Missouri, for a couple of days to consult with a private attorney. Appellant and Allen returned to Sedalia after counsel recommended that she have her doctor examine her for an opinion on her competency.

After returning to Sedalia, Allen took Appellant to her bank where she attempted to cash in certificates of deposit worth $21,000.00. The bank informed them that

**1.** All statutory references are to RSMo (1994) unless otherwise noted.

the assets had been frozen and that they could not negotiate the certificates.

Dr. Campbell examined Appellant on October 18, 1999. Dr. Campbell determined that Appellant was capable of taking care of her own physical needs. However, because Appellant was unable to describe the nature and extent of her assets and because of her unusual behavior with regard to Allen, Dr. Campbell opined that she was incompetent to properly manage her own finances.

The Circuit Court conducted a hearing on the petition for appointment of a guardian and conservator on November 9, 1999. Appellant was represented by appointed counsel. After hearing all the evidence, the trial court determined that Appellant was not incapacitated and denied the request for the appointment of a guardian. However, the court determined that Appellant was partially disabled rendering her incapable of managing some of her financial resources. Based upon that finding, the court appointed the Pettis County Public Administrator as conservator of Appellant's estate. The court's order further provided that the conservator would provide Appellant with a checking account with a running balance of at least $500.00 for her own personal use. On November 10, 1999, the Circuit Court issued Letters of Conservatorship in accordance with its order of November 9, 1999.

On December 7, 1999, private counsel from Columbia entered an appearance on behalf of Appellant. That same day, counsel filed a motion for new trial on behalf of Appellant.

On January 3, 2000, the Public Administrator, as conservator of Appellant's estate, filed a motion to amend the letters of conservatorship and the judgment of No-

vember 9, 1999. The public administrator asked the court to limit the spending allowance of Appellant to $500.00 per month. The Public Administrator stated that allowing Appellant access to an account with a running balance of over $500.00 allowed Appellant unlimited spending ability and required the Public Administrator to monitor the checking account on a daily basis to make sure the balance was always over $500.00.

Based upon the pleadings filed by the Public Administrator, on January 4, 2000, the Circuit Court entered an order amending its prior judgment and the letters of conservatorship to limit Appellant's spending allowance to $500.00 per month. Thereafter, Appellant timely filed her notice of appeal. She brings five points of error.

In her first point, Appellant claims that the trial court lacked jurisdiction to appoint a conservator over her estate for two different reasons. First, Appellant claims the petition filed by Campbell failed to meet the pleading requirements of the relevant statutory provisions. Second, Appellant claims that she was never properly served because service was obtained by a private process service rather than the county sheriff.

■ With regard to her first argument, Appellant contends that Campbell's petition failed to affirmatively state whether Appellant had a living spouse or any children. While it is undisputed that Appellant's husband had died over thirty years ago, that she did not remarry, and that she had no children, Appellant claims that the petition for conservatorship was insufficient for failing to state that she had no living husband or children.[2]

---

**2.** While Campbell petitioned for the appointment of a guardian under § 475.060 in addi-

tion to the appointment of a conservator, the judgment denying the appointment of a

■ The power to appoint a guardian or conservator is purely statutory, and such power must be exercised in the manner prescribed by statute. *In re Dugan,* 309 S.W.2d 145, 148 (Mo.App. S.D.1957). "According to § 475.075, the jurisdiction of the court to appoint a guardian or a conservator is established when a petition in the form and with the contents set out in §§ 475.060 or 475.061 is filed, the cause is set for hearing by the judge and the alleged incompetent is served with a copy of the petition, written notice stating when and where the cause will be heard, the name and address of appointed counsel, the names and addresses of witnesses and a copy of the alleged incompetent's rights." *Werner v. Wright,* 737 S.W.2d 761, 764 (Mo.App. W.D.1987).

■ The requirements set forth in § 475.061 for a petition for conservatorship are mandatory and must be satisfied in order for the circuit court to have subject matter jurisdiction to decide the matter. *Id.* (citing *In re Dugan,* 309 S.W.2d at 148). Section 475.061 provides that a petition for the appointment of a conservator shall set forth: (1) the name, age, domicile, actual place of residence and post-office address of the allegedly disabled person; (2) if appointment is sought for a natural person, other than the public administrator, the names and addresses of wards and disabled persons for whom such person is already guardian or conservator; (3) the reasons why the appointment is sought; and (4) an allegation that the respondent is unable by reason of some specific physical or mental condition to receive and evaluate information or to communicate decisions to such an extent that the allegedly disabled lacks the ability to manage his or her financial resources. Section 475.061 makes no mention of the need to

include allegations in the petition for conservatorship related to the existence of or the identity of the allegedly disabled person's spouse and children.

■ Appellant argues, however, that the provisions of § 475.075.2 required the petitioner to state that her husband was deceased and that she had no children. She claims that the trial court lacked jurisdiction over the matter because that subsection was not satisfied. Section 475.075.2 states in relevant part:

The petition shall state the names and addresses of the spouse, parents, children who have reached eighteen, any person serving as his [or her] guardian, conservator, limited guardian or limited conservator, any person having power to act in a fiduciary capacity with respect to any of the respondent's financial resources, and any person having his care and custody known to the petitioner. Each person so listed shall be served with like notice in any manner permitted by section 472.100, RSMo. If no such spouse, parent or child is known, notice shall be given to at least one of his [or her] closest relatives who has reached eighteen.

The obvious purpose of these provisions is to identify and provide notice to immediate family members and others who might have a legal interest in the pending proceedings. The language of this section requires only the identification of those existing individuals who fall within the listed categories. The statute does not require pleadings stating that no such individuals exist or identifying every deceased individual ever to fall within any of the categories mentioned in the statute. Indeed, the requirement that all listed persons be served with notice clearly signifies

---

guardian has not been challenged on appeal. Accordingly, we do not consider whether

Campbell's petition sufficiently met the pleading requirements under § 475.060.

the legislature's intent that only living individuals be so listed. Accordingly, there was no requirement that Campbell's petition include allegations that Appellant had a deceased husband or that she .did not have any children in order to satisfy the relevant statutory provisions.

■ Appellant next argues that the Circuit Court lacked jurisdiction because she was not properly served with the petition and notice. The relevant "affidavit of service" was filed on October 19, 1999. The affidavit, written under Civil Courier Service letterhead, stated "PERSONAL SERVICE served to Louise Flair at 1710 W. 11th, 10–15–99 at 10:00 a.m." The certificate of service was signed by Angela Venable as "Representative for Civil Courier Service." Appellant contends that the language of § 472.100(7) required service of process by the sheriff and that service by a private process server was insufficient to establish the trial court's jurisdiction over the matter.

■ Section 475.075.2 requires that:

[t]he respondent *shall be served in person* with the following: A copy of the petition; a written notice stating the time and place the proceeding will be heard by the court, the name and address of appointed counsel, and the names and addresses of the witnesses who may be called to testify in support of the petition; and with a copy of the respondent's rights as set forth in subsections 7 and 8 of this section. The notice shall be signed by the judge or clerk of the court and served in person

on the respondent a reasonable time before the date set for the hearing.

(emphasis added). Accordingly, "[p]ersonal service of the petition and notice upon the alleged incompetent is jurisdictional and mandatory" in proceedings under § 475.075. *Scott v. Scott,* 882 S.W.2d 295, 297 (Mo.App. E.D.1994) (quoting *Werner,* 737 S.W.2d at 764).

While chapter 475 does not contain provisions indicating how personal service may be accomplished, Section 475.020 applies the provisions of chapter 472 to actions for the appointment of guardians and conservators.[3] § 475.020. With regard to service, Section 472.100.7 states: "Personal service and service by registered or certified mail may be made by any competent witness, except that service by mail of any process, order or notice issued by the court shall be made by the clerk, or, if personal service is required, by the sheriff." Based upon this statutory language, Appellant argues that, because the notice was issued by the court, service could only be accomplished by the sheriff. .

Clearly, the return of service does not indicate that Ms. Venable was acting as a sheriff at the time she purportedly served Appellant, and in fact, indicates that Ms. Venable was acting as a private process server. Therefore, service of process was not properly obtained in accordance with the provisions of § 472.100.7.

■ However, in determining whether service was proper, we must also look to the service of process provisions contained in Rule 54. "[I]f a statute authorizes a method of service, service may be made

---

**3.** Section 475.020 provides that:

[t]he provisions of chapter 472, RSMo, unless therein restricted to decedents' estates, apply to guardianships and conservatorships.... In other cases, where no rule is set forth for guardianships and conservatorships in sections 475.010 to 475.370, the

rule regarding decedents' estates in this law shall likewise apply to guardianships and conservatorships when applicable thereto and not inconsistent with the provisions of sections 475.010 to 475.370, unless a contrary rule of court is duly promulgated or declared.

pursuant to the provisions of the statute or as provided in Rule 54." *Worley v. Worley*, 19 S.W.3d 127, 129 (Mo. banc 2000) (citing *Rule 54.18*). Rule 54.01 states:

Upon the filing of a pleading requiring service of process, the clerk shall forthwith issue the required summons or other process and, unless otherwise provided, deliver it for service to the sheriff or other person specially appointed to serve it. If requested in writing by the party whose pleading requires service of process, the clerk shall deliver the summons or other process to such party who shall then be responsible for promptly serving it with a copy of the pleading.

Thus, Rule 54.01 provides two different methods for personally serving process:

The first sentence of the rule provides for service by the sheriff or other person specially appointed. The remainder of Rule 54.01 permits a party to request in writing to receive the summons and to be responsible for its prompt service. The second method does not require the appointment of a special process server. Under Rule 54.13(a), service under this method may be made by any person over 18 years who is not a party to the action.[4]

*Worley*, 19 S.W.3d at 129.

 *Worley* involved a mother/wife who sought to challenge the judgment entered against her based upon the fact that she was not served by a sheriff, deputy sheriff or coroner as provided by statute and that service was made by an individual that had not been specially appointed by the court or the circuit clerk as provided

by Rule 54. As in *Worley*, in the case at bar, "[t]he record ... does not contain any written request that the summons be delivered to [the petitioner], who would be responsible for promptly serving it with a copy of the petition." *Id.* at 128. Absent such a written request to the clerk, under the provisions of Rule 54.01, the sheriff or "other person specially appointed" was required to make service. *Id.* at 129.

As noted, *supra*, Ms. Venable was not acting as a sheriff or deputy sheriff when she purportedly served Appellant. Therefore, in order for service to have been proper, Ms. Venable had to have been "specially appointed" by the court or the clerk to serve process upon Appellant.

 Once again, as in *Worley*, "[t]he record does not reflect that [the petitioner] nominated any particular person as special process server or that the trial judge or circuit clerk specially appointed any individual for the purpose of serving process." *Id.* at 128. No order appointing a special process server appears in the record, and the case history sheet merely reflects that on October 14, 1999, "[n]otice to Respondent sent to Civil Courier Service for service." Accordingly, the record does not reflect that either the court or the clerk specially appointed Ms. Venable to serve Appellant. Since Ms. Venable was not specially appointed by the clerk or the court, she did not have the authority to serve process on the Appellant. *Id.* at 129. Thus, Appellant was not properly served in accordance with the relevant statutes and rules. *Id.; See also, Skelly v. The Maccabees*, 217 Mo.App. 333, 272 S.W. 1089, 1090

---

4. Rule 54.13 states: "Service of process within the state, except as otherwise provided by law, shall be made by the sheriff or a person over the age of 18 years who is not a party to the action.... Personal service within the state shall be made ... [u]pon an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person of the individual's family over the age of fifteen years ..."

(1925) (holding that the judgment of insanity rendered by the probate court was void for want of jurisdiction and without effect because service of notice was made by an asylum nurse rather than by the "sheriff or other proper officer of the court" as required by law).[5] Therefore, we must consider the ramifications of the lack of proper service.

Respondent Schmidt argues that the issue of improper service cannot be considered by this court on appeal because Appellant did not raise any objection to service before the trial court. Respondent cites *Matter of Conservatorship Estate of Moehlenpah*, 763 S.W.2d 249, 260 (Mo.App. E.D.1988), for the proposition that a challenge to notice not presented to the trial court will not be considered on appeal.

In response, Appellant argues that her challenge to the sufficiency of service under the statute is a challenge to subject matter jurisdiction rather than personal jurisdiction and that such a challenge may be raised at any time. She claims that all of the statutory procedures for the institution of a conservatorship action must be complied with before the trial court has subject matter jurisdiction over the case.

Given the manner in which prior cases have treated this subject, Appellant's confusion is understandable. In *Werner v. Wright*, 737 S.W.2d 761, 764–65 (Mo.App. W.D.1987), this Court noted that the petition did not conform to the statute and that the notice requirements were not satisfied and found, "[t]he court, therefore, did not acquire subject matter jurisdiction

to institute a conservatorship and its orders on the subject ... were void." This language in *Werner* would appear to imply that both the pleading requirements and notice requirement are matters of subject matter jurisdiction. Moreover, the majority of cases dealing with this issue have merely stated that the notice requirement is "jurisdictional and mandatory" without specifying whether they were referring to personal or to subject matter jurisdiction. *State ex rel. Terry v. Holtkamp*, 330 Mo. 608, 51 S.W.2d 13, 19 (1932); *Boatmen's Nat'l Bank of St. Louis v. Wurdeman*, 344 Mo. 573, 127 S.W.2d 438, 440 (1939); *Hirst v. Cramer*, 195 S.W.2d 738, 741 (Mo. banc 1946); *Werner*, 737 S.W.2d at 764.

 It is apparent, however, from the statutory requirements and the manner in which the cases have treated them, that the jurisdictional nature of the pleading requirements of § 475.061 is different from the jurisdictional nature of the notice requirement of § 475.075. The statutory requirements setting forth the allegations that must be included in the petition are necessary for the court to determine whether it has subject matter jurisdiction over the case. *Scott*, 882 S.W.2d at 297 (quoting *In re Dugan*, 309 S.W.2d at 149). The statutory notice requirements are necessary so that jurisdiction may be obtained over the parties to the action. *Id.* Accordingly, the notice requirement of § 475.075.2 relates to personal jurisdiction over the alleged incompetent rather than subject matter jurisdiction over the case. *Id.* at 298; *See also, Hirst*, 195 S.W.2d at

---

5. Even if Ms. Venable were deemed to have been specially appointed by the court, neither her return nor the record establish that the proper documents were served on Appellant. " 'A party who elects to use a special process server does so at his or her own risk and bears a heavy burden of showing that every procedural requirement for service of process

via a 'specially appointed' individual has been met.' " *Reisinger v. Reisinger*, 39 S.W.3d 80, 2001 WL 243615, at *4 (Mo.App. E.D. March 13, 2001) (quoting *Walker v. Gruner*, 875 S.W.2d 587, 588 (Mo.App. E.D.1994)). The certificate of service signed by Ms. Venable does not indicate what documents, if any, were purportedly served upon Appellant.

741 (Mo.1946); *Ussery v. Haynes*, 344 Mo. 530, 127 S.W.2d 410, 415 (1939) (citing *Skelly*, 272 S.W. at 1090) ("[N]otice is jurisdictional and corresponds to the summons in ordinary actions.").

We do not perceive *Werner* to be inconsistent with this position. *Werner* relied on *Hirst* and *Dugan* in stating that the statutory notice is "jurisdictional and mandatory." *Werner*, 737 S.W.2d at 764. As noted, *supra*, *Hirst* and *Dugan* reflect that the notice requirement relates to personal jurisdiction. Thus, the *Werner* court recognized that the notice requirements were "jurisdictional," albeit in the sense of personal jurisdiction over a necessary party. We believe that *Werner* intended to be in conformity with the cited case law and is correctly read to say that the proceedings were not based on a prior application conforming to the statute resulting in a lack of subject matter jurisdiction, *and* they were conducted in violation of the requirements for notice and, therefore, without personal jurisdiction over the alleged incapacitated person. Consequently, we do not view *Werner* as holding that failure of proper notice deprives the court of subject matter jurisdiction, but rather of personal jurisdiction.

■ Accordingly, we must next determine whether this court should address the merits of Appellant's notice claim or whether the alleged incompetent waived

her challenge to the sufficiency of process by failing to affirmatively raise that issue at trial. In *Moehlenpah*, the Eastern District, without citation and in summary fashion, stated that the notice issue was not raised before the trial court, that it perceived no prejudice, and that it would not consider the issue.[6] *Moehlenpah*, 763 S.W.2d at 260. However, in *Scott*, the Eastern District differentiated *Moehlenpah* from a case challenging notice under § 475.075.2 noting that *Moehlenpah* involved an interpretation of § 475.075.11 rather that § 475.075.2 and that *Moehlenpah* did not involve a personal jurisdiction issue. *Scott*, 882 S.W.2d at 298. Thus, under *Scott*, *Moehlenpah* is inapplicable to the case at bar which likewise involves a challenge to proper notice under § 475.075.2.

■ Moreover, the reason that appellate courts reject most issues that are raised for the first time on appeal is that the litigant is deemed to have waived the right to pursue that issue by not raising it before the trial court. *Landvatter Ready Mix, Inc. v. Buckey*, 963 S.W.2d 298, 303 (Mo.App. E.D.1997). With regard to claims challenging the personal jurisdiction of the trial court, ordinarily, "[a] defending party who wishes to raise defenses of lack of personal jurisdiction, insufficiency of process, or insufficiency of service of process must do so either in a pre-answer motion or in the party's answer." *Worley*,

---

**6.** In *Matter of Conservatorship Estate of Moehlenpah*, 763 S.W.2d 249, 260 (Mo.App. E.D. 1988), the court addressed the issue as follows:

In their fourth point, appellants contend that the trial court erred in appointing a conservator ad litem because: (a) notice was not served in person on [the alleged disabled] a reasonable time before the hearing as required by § 475.075.11 . . .

\* \* \*

Appellants' argument that [the alleged disabled] was not served in person a reasonable time before the hearing was never presented to the trial court. . . . Contentions not put before the trial court will not be considered on appeal. In any event, all attorneys were noticed and were present, and all parties were represented at the hearing. We find no prejudice.

19 S.W.3d at 129. If not raised at that time, challenges to the personal jurisdiction of the court are deemed to have been waived under Rule 55.27(g)(1)(B). *Id.* Since Appellant did not raise the issue of defective notice to the trial court, such a claim would ordinarily be deemed waived.

■ However, our courts have long been hesitant to find waiver on the part of an allegedly incapacitated individual. Competency cases present a dilemma with regard to waivers because of the difficulty in ascertaining whether the alleged incompetent was capable of knowingly and intelligently waiving a given right and determining whether the alleged incompetent did indeed waive that right. *In re Link,* 713 S.W.2d 487, 495 (Mo. banc 1986). As stated in *Matter of Jessee,* 744 S.W.2d 514 (Mo.App. W.D.1988):

> When a person's competence is being determined, a decision that may result in loss of liberty, loss of choice, loss of control over living accommodations, financial arrangements, and property, that person's fundamental rights must be protected by the judicial system. Missouri has, since at least 1939, provided for notice, the right to be present, to be represented by counsel, appointment of counsel if an attorney does not appear, and the right to jury trial. While those rights may be waived, they must be affirmatively, intelligently and knowingly waived on the record.

*Id.* at 516–17 (internal citations omitted). Accordingly, a waiver of the sufficiency of notice by an alleged incompetent must be affirmatively made on the record and may not be inferred from the mere appearance of the alleged incompetent and/or her appointed counsel at trial. This is consistent with the rule adopted in a majority of jurisdictions that "[t]he personal appear-

ance of the incapacitated person either on his or her own or by counsel ... does not constitute a waiver of the required notice or any defect therein." 39 Am.Jur.2d Guardian and Ward § 62 (citing in part, *Boatmen's Nat'l Bank of St. Louis v. Wurdeman,* 344 Mo. 573, 127 S.W.2d 438 (1939)).

In the case at bar, we find no waiver of proper notice on the part of Appellant. The record in the case at bar does not reflect that Appellant affirmatively waived the notice requirement of § 475.075, and the mere appearance of Appellant and her appointed attorney at the competency hearing did not constitute a waiver of proper notice.

■ As noted, *supra,* Appellant was not properly served with notice as provided by rule or statute. "'When the requirements for manner of service are not met, a court lacks power to adjudicate.'" *Worley,* 19 S.W.3d at 129 (quoting *State ex rel. Plaster v. Pinnell,* 831 S.W.2d 949, 951 (Mo.App. S.D.1992)). Since the trial court lacked personal jurisdiction over Appellant, its judgment is void. *Worley,* 19 S.W.3d at 130 (quoting *Crouch v. Crouch,* 641 S.W.2d 86, 90 (Mo. banc 1982)).

The trial court's order appointing a conservator for Appellant is reversed, and the matter is remanded with instructions that the cause be dismissed for lack of personal jurisdiction.[7] Since the judgment and proceedings below are void, the dismissal is without prejudice to the court exercising jurisdiction upon the filing of a proper application and proper service of the required notice. *See, Heinle v. K & R Exp. Sys., Inc.,* 923 S.W.2d 461, 464 (Mo.App. E.D.1996); *Wadlow v. Donald Lindner*

---

**7.** Because Appellant's first point is dispositive and related to the jurisdiction of the court, Appellant's remaining points will not be addressed.

*Homes, Inc.*, 654 S.W.2d 644, 647 (Mo.App. E.D.1983).

All concur.